DESMARAIS v. MYEFSKI

1. Negligence—Standard of Conduct—Question for Jury.
   The standard of conduct employed in determining whether or not a person is guilty of negligence is that of a reasonably prudent man acting under the same or similar circumstances, and whether or not the standard has been attained is normally a jury question.

2. Negligence—Question for Jury.
   A negligence case may be taken from a jury only under extreme circumstances where reasonable minds could not differ upon the facts, or the inferences to be drawn from them.

3. Motions—Directed Verdict—Judgment Notwithstanding the Verdict—Evidence—Appeal and Error.
   The facts are reviewed in the light most favorable to plaintiff on review of a trial court's refusal to grant a motion for a directed verdict or judgment notwithstanding the verdict.

4. Motions—Directed Verdict—Judgment Notwithstanding the Verdict—Evidence—Question for Jury.
   A question is presented for the jury where such facts are presented that reasonable men could honestly reach a different conclusion when testing whether or not to grant or deny a motion for a directed verdict or a motion for a judgment notwithstanding the verdict.

---

References for Points in Headnotes
[1] 38 Am Jur, Negligence § 346.
[2] 38 Am Jur, Negligence §§ 344–361.
[3] 5 Am Jur 2d, Appeal and Error §§ 839, 886.
[4] 53 Am Jur, Trial § 349.
[5–7] 8 Am Jur 2d, Automobiles and Highway Traffic § 1013.

5. NEGLIGENCE—QUESTION FOR JURY—AUTOMOBILES—INTERSECTIONS
—EVIDENCE.

Question of defendant-driver's negligence was for a jury to determine where evidence introduced at trial included: plaintiff-driver's testimony of the precautions she took before entering an intersection; position and length of skid marks left by defendant's vehicle before impact and the reaction time necessary before brakes could be applied; testimony that plaintiff entered the intersection first and had the statutory right of way; the severity of the impact; the distance that plaintiff's vehicle was pushed after being struck by defendant's vehicle; the fact that, at the time of the collision, defendant had only five minutes to get to a wedding; an inference that the speed of defendant's vehicle was improper; defendant's testimony that he did not see plaintiff's vehicle until it was in the intersection and directly in front of his vehicle; photographs showing the damage to the two vehicles; and the nature and extent of plaintiff's injuries (MCLA § 257.649).

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

What constitutes due care for one's own safety, like what constitutes negligent conduct towards others, is a question of fact and not of law, and, where a jury has been demanded, must usually be left for its determination.

7. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Issue whether plaintiff-driver was guilty of contributory negligence was properly submitted to a jury where the minds of reasonable men could differ in answering that question.

Appeal from Dickinson, Ernest W. Brown, J. Submitted Division 3 October 6, 1969, at Marquette. (Docket No. 6,287.) Decided December 4, 1969.

Complaint by Marjorie Desmarais and James Desmarais against Frank A. Myefski for damages resulting from an automobile collision. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Brouillette & Brouillette,* for plaintiffs.

*Humphrey & Weis,* for defendant.

Before: R. B. Burns, P. J., and Holbrook and
Levin, JJ.

Holbrook, J. This is a joint action brought by
Marjorie Desmarais and her husband, James
Desmarais, to recover damages resulting from an
automobile collision at the intersection of Spruce
and "C" streets in the city of Iron Mountain, Mich-
igan on March 11, 1967, at approximately 10:55
a.m. Just before the accident, the plaintiff-wife was
driving the family car, a 1962 Mercury Comet, north
on Spruce street. As a person travels north on
Spruce street, the road winds around a lake and a
ball field, and, about one block from the intersection
of Spruce and "C" streets, Spruce street makes a
right turn. Defendant Frank A. Myefski, driving
a 1966 Pontiac automobile, was proceeding east on
"C" street, which intersects Spruce street from an
east-west direction. The intersection was open, with
no traffic controls. Both "C" street and Spruce
street are 32 feet wide from curb to curb. Iron
Mountain had a posted speed limit of 25 miles per
hour.

The record discloses that, at the time of the acci-
dent, the weather was clear. The pavement on "C"
street was dry with some gravel on the surface and
Spruce street, in the direction from which plaintiffs'
vehicle was proceeding, was ice covered with some
gravel on top of the ice. Low snowbanks were pres-
ent in the vicinity of the intersection; however, they
were not such as to obstruct vision at the intersec-
tion. The testimony adduced at the trial indicated
that the view of traffic conditions on "C" street from
plaintiffs' vehicle at the intersection was unob-
structed for a block in both directions. The view
from defendant's vehicle was likewise unobstructed.

Plaintiff claimed that as she approached the intersection in question she stopped her vehicle at approximately the curb line of "C" street as projected across Spruce street, looked to her right and then to her left, shifted into low and proceeded out into the intersection after determining that there were no vehicles approaching within her range of vision on "C" street; that she was approximately into the middle of the intersection when her vehicle was struck on the left side at the driver's door and forward by defendant's vehicle.

This cause was tried before the court and a jury. At the conclusion of plaintiffs' proofs defendant moved for a directed verdict of no cause of action on the grounds that there was no proof of negligence on the part of defendant and because as a matter of law plaintiff-wife was guilty of negligence which contributed to her injuries and damages. This motion was denied and it was renewed at the close of all the evidence, when it was again denied. The jury rendered a verdict of $7,500 to plaintiff-wife and $3,036.50 to plaintiff-husband. After the entry of the judgment, defendant moved for a judgment *non obstante veredicto,* or a new trial, which was denied, and defendant filed this appeal.

We restate the issue defendant raises on appeal:

That the trial court committed error in refusing to grant his motions for directed verdict before the court submitted the case to the jury and in refusing his post-judgment motion for judgment *non obstante veredicto* because (1) plaintiffs failed to present sufficient evidence to raise an issue of fact as to defendant's negligence that was a proximate cause of the accident and plaintiffs' damages; and, (2) that the plaintiff-driver was guilty of contributory negligence as a matter of law.

(1) Plaintiffs' amended complaint alleged that the defendant was guilty of negligence in striking the plaintiffs' vehicle and that such negligence consisted of the following:

"3.) * * *

"a.) In traveling at an excessive rate of speed for the conditions then and there present.

"b.) For failure to yield the statutory right-of-way at an open intersection.

"c.) Failure to maintain a proper lookout.

"d.) For failure to maintain proper management and control of his vehicle."

Plaintiffs' proofs at the trial consisted of the examination of several witnesses who testified as to their observations at the scene on March 11, 1967, at or near the time of the accident. Witness John Spigarelli, an employee of the Iron Mountain police department, who investigated the accident, testified in part as follows:

"*Q.* Did you, or you and your brother officer, take any measurements as to distances?

"*A.* Yes. * * * This car [plaintiffs'] was pushed sideways after it was struck. I think the two cars came together * * *. And then it was pushed right up in here, in the snowbank. * * * Now, this car was pushed I think it was 29 paces after it was struck. Yes, 29 paces. So that would roughly be around 80 some feet to the snowbank, into the snowbank.

"*Q.* Did you measure any other skidmarks left by the Myefski vehicle prior to the impact?

"*A.* Yes. The Myefski car I think had * * * was it * * * car number one. I think he had 21 feet of skidmarks.

"*Q.* Prior to the point of impact?

"*A.* To the point of impact. Up to the point of impact, yes.

* * *

"*The Court:* Plaintiffs' exhibit 1 may be received.

"*Q.* Mr. Spigarelli * * * To the best of your recollection, does that photograph represent the damage done to the Desmarais vehicle?

"*A.* Yes, it does. Yes, definitely.

"*Q.* And this also shows that the damage was confined to the front, * * *

"*A.* Right.

"*Q.* (*continuing*) * * * from the driver's door forward?

"*A.* Right."

The testimony of John Spigarelli was confirmed by his fellow officer Elroy Mattson.

Ann Desmarais, a passenger in the vehicle operated by plaintiff, testified in part:

"*Q.* What happened as your mother drove this vehicle and you approached the intersection of Spruce street and 'C' street?

"*A.* Well, she stopped. And I always look both ways and I looked both ways and I didn't see anything. Then she proceeded and then all of a sudden, real close, I saw this car and I yelled.

* * *

"*Q.* When you looked to your right did you see any vehicles coming?

"*A.* No.

"*Q.* Did you see any vehicles coming when you looked to your left?

"*A.* No.

"*Q.* Were the windows which you were looking through clouded up or frosted up, or anything that would impair your visibility?

"*A.* No."

Plaintiffs' nephew, Peter Trembath, a back-seat passenger in plaintiffs' vehicle, testified in part as follows:

"*Q.* Did the vehicle in which you were riding do anything at the intersection of 'C' street and Spruce street?

"*A.* It stopped.

"*Q.* You are sure of this?

"*A.* Yes.

\* \* \*

"*Q.* Did you make any observations after the stop?

"*A.* Yes. I looked both ways.

\* \* \*

"*Q.* How far could you see to your left?

"*A.* A block or just a little bit more.

\* \* \*

"*Q.* When you looked to your left did you observe any oncoming traffic?

"*A.* No."

Marjorie Desmarais, plaintiff-driver, testified in part:

"*Q.* Tell us what happened as you approached the intersection of 'C' street and Spruce street.

"*A.* Well, I stopped there and looked right and left and then proceeded out.

\* \* \*

"*Q.* You are indicating that your car stopped at approximately the curb line of 'C' street as extended across Spruce?

"*A.* Yes.

"*Q.* What did you do then?

"*A.* Well, I shifted into low and then started creeping across.

"*Q.* Is there any particular reason why you say you were just 'creeping across'?

"*A.* Well, there was a little patch of ice here with gravel on top.

"*Q.* Is Spruce street level at this particular point?

"*A.* No, there's an incline there.

\* \* \*

"*Q.* Was there any particular reason why you stopped even though you didn't have to?

"*A.* Well, there have been many accidents on that corner and I know it's a bad corner.

* * *

"*Q.* And when you were stopped there you looked to the right and looked to the left?

"*A.* Yes.

"*Q.* Was it a fleeting glance or was it a full look in both directions?

"*A.* Full look.

"*Q.* And you never saw the Myefski vehicle?

"*A.* No, I did not."

Frank A. Myefski, the defendant, testified in part:

"*Q.* Where were you coming from?

"*A.* I was coming from my sister's home.

"*Q.* Where were you going?

"*A.* To a wedding.

* * *

"*Q.* What time was that wedding, Mr. Myefski?

"*A.* 11 o'clock.

"*Q.* And this accident happened at approximately 10:55?

"*A.* Thereabouts.

* * *

"*Q.* How fast were you traveling when you approached the intersection of 'C' street? I mean Spruce street.

"*A.* Approximately 20 miles per hour.

* * *

"*Q.* All right. Now tell us what happened as you approached the intersection of Spruce and 'C' streets. Tell us what you did and what you saw.

"*A.* Well, I looked to the left, saw nothing and proceeded; and of course as I swung my head to the right I observed this car directly in front of me. And I observed the driver of the other automobile looking or swinging her head in my direction just at the point of impact. And at the time that I saw

the other vehicle I slammed on my brakes and it was just momentarily, of course, before we collided.

"*Q.* Were you already in the intersection when you first saw this other car?

"*A.* Yes, sir.

"*Q.* Did you have a chance to form an estimate as to the speed of this other car that was on your right?

"*A.* Yes. I would estimate the speed at equally the speed that I was traveling at the time.

"*Q.* You applied your brakes when?

"*A.* Just after entering the intersection.

"*Q.* Was this when you first saw the other car?

"*A.* Yes, sir.

&ast; &ast; &ast;

"*Q.* Now, as you were proceeding down West 'C' street and as you approached Spruce street were you looking ahead at all times?

"*A.* Yes, sir.

"*Q.* Was there anything to obstruct your view to the right onto Spruce street?

&ast; &ast; &ast;

"*A.* No, sir.

&ast; &ast; &ast;

"*Q.* The approximate time of the accident was 10:55, five minutes to eleven. You were going to a wedding at 11 o'clock?

"*A.* Yes, sir.

"*Q.* You do not know where the church is or how far it is from Mrs. Konopacke's home.

"*A.* My sister does know.

"*Q.* Yes. But you were driving?

"*A.* Yes, sir.

"*Q.* And you indicate that the speed limit is 25 miles an hour and that you were only going 20 miles an hour.

"*A.* Yes. I said approximately 20. &ast; &ast; &ast;"

Our Supreme Court, in *McKinney* v. *Yelavich* (1958), 352 Mich 687, defined negligence and indicated the circumstances under which a negligence

case may be taken from the jury.    Mr. Justice
TALBOT SMITH stated at pp 691, 692:

"The case before us is unusual, however, in the
clarity with which is revealed the source of much
of our error.    We have tried to substitute specific
roles of behavior for a general standard of care.
All will agree, of course, that negligence is conduct
that fails to measure up to an acceptable standard.
The standard now employed by the law is that of a
reasonably prudent man acting under the same or
similar circumstances.    Whether or not the standard
has been attained is, normally, a jury question.
Only under the most extreme circumstances, those,
in fact, where reasonable minds could not differ
upon the facts, or the inferences to be drawn there-
from, can the case be taken from the jury.    If honest
differences of opinion between men of average intel-
ligence might exist, the issue should not be resolved
by the court alone."

In the case of *Sparks* v. *Luplow* (1963), 372 Mich
198, 202, it is stated:

"It is a well-settled principle of law that on review
of a trial court's refusal to grant a motion for a
directed verdict or judgment *non obstante veredicto,*
the facts are reviewed in the light most favorable
to plaintiff.    *Tacie* v. *White Motor Company* (1962),
368 Mich 521, 527.    The test used is whether from
the facts in the light most favorable to plaintiff,
reasonable men could honestly reach a different con-
clusion.    If the answer to this is 'yes,' the question
is for the jury.    *Anderson* v. *Gene Deming Motor
Sales, Inc.* (1963), 371 Mich 223."

Defendant asserts that the instant case is con-
trolled by the ruling in *Taylor* v. *Butcher* (1957),
349 Mich 581, where no evidence of the actions of the
defendant which would amount to negligence under
the circumstances was introduced.    The facts therein

are not analogous to the facts present in the case at hand, and it is therefore not applicable.

We find upon examination of the record and viewing the testimony in the light most favorable to plaintiffs that there was sufficient evidence introduced regarding defendant's liability to submit it as a question of fact for the jury to determine, *viz.*: the precautions which plaintiff-driver said she took before entering the intersection; the position and length of skid marks left by the defendant's vehicle before impact, and the reaction time necessary before brakes could be applied; testimony that plaintiff entered the intersection first and had the statutory right of way under MCLA § 257.649 (Stat Ann 1968 Rev § 9.2349); the severity of the impact; the distance that plaintiffs' vehicle was pushed after being struck by defendant's vehicle; the fact that the jury could determine defendant was in a hurry to get to a wedding scheduled to begin within five minutes from the time of the accident; that the speed of defendant's vehicle could be found to be improper as deduced from the physical facts; that defendant did not see plaintiffs' vehicle until it was in the intersection and directly in front of his vehicle; photographic evidence showing the damage to the two vehicles; and the nature and extent of plaintiff Marjorie Desmarais' injuries. The question of liability of the defendant was debatable and properly for the jury to determine. *Washburn* v. *Lucas* (1964), 373 Mich 610; *McKinney* v. *Anderson* (1964), 373 Mich 414; *Thompson* v. *Llewellyn* (1964), 372 Mich 588; *Pavlos* v. *Polk* (1969), 16 Mich App 259; *Archer* v. *Melton* (1969), 15 Mich App 476; *Mowinski* v. *Bishop* (1968), 13 Mich App 140; and *Hackley Union National Bank & Trust Company* v. *Warren Radio Company* (1966), 5 Mich App 64.

(2) The facts taken in the light most favorable to plaintiffs which we have ruled justified the submission of the liability issue to the jury are likewise applicable to the issue of plaintiff-driver's contributory negligence. In support of his contention that plaintiff Marjorie Desmarais was contributorily negligent, as a matter of law, defendant cites *Yackso* v. *Bokulich* (1952), 333 Mich 412; *Yampolsky* v. *Smith* (1948), 320 Mich 647 and *Zuidema* v. *Bekkering* (1931), 256 Mich 327. The facts in these cases are not analogous to the facts in the present case and therefore are not applicable.

In the case of *Archer* v. *Melton, supra,* it is stated on p 477:

"Plaintiffs contend the liability issue should not have been submitted to the jury, since defendants were guilty as a matter of law according to the above statute, which grants the right of way to a vehicle entering an unmarked intersection on the right. However, the only testimony on the issue was given by one of the plaintiffs, an 'interested witness,' who testified she did not see defendant's vehicle until the collision. Photographic evidence disclosed damage to the right rear portion of defendant's vehicle. Consequently, the liability question was debatable and properly submitted to the jury. Also, from the evidence, the jury could reasonably disbelieve plaintiffs' allegation that defendants failed to yield the right of way."

In *Schweim* v. *Johnson* (1968), 10 Mich App 81, 84 our Court stated:

"The test to follow in negligence cases is well settled. If reasonable men can honestly reach different conclusions from the facts offered at the trial, then the question of liability is properly left to the determination of the jury. What conduct constitutes negligence toward the well-being of

others, and what conduct is proper for one's own well-being, are questions of fact best left to the province of the jury in the light of the evidence adduced at the trial. See *Ingram* v. *Henry* (1964), 373 Mich 453."

Also see *Thompson* v. *Michigan Cab Co.* (1937), 279 Mich 370. In *Ingram* v. *Henry, supra,* p 457, it is stated as follows:

"As we have said repeatedly in recent years (see *Ackerberg* v. *Muskegon Osteopathic Hospital* (1962), 366 Mich 596, *Hoag* v. *Fenton* (1963), 370 Mich 320, and *Todd* v. *Simonis* (1963), 370 Mich 342, what constitutes due care for one's own safety, like what constitutes negligent conduct toward others, is a question of fact and not of law. As such it must usually be left for determination by the jury, where a jury has been demanded."

We rule that the minds of reasonable men can differ in answering the question of whether plaintiff-driver was guilty of contributory negligence. Having so determined, we conclude that it was not error to submit the issue to the jury.

Affirmed. Costs to plaintiff.

All concurred.