NARRING v SEARS, ROEBUCK & COMPANY

OPINION OF THE COURT

1. NEGLIGENCE—EVIDENCE—PRIOR ACCIDENTS—DANGEROUS CONDI-
   TION—NOTICE.

   Evidence of prior accidents at the same place and arising from
   the same cause is admissible in a negligence case to show
   defendant's notice or knowledge of the defective or dangerous
   condition alleged to have caused the accident; such evidence is
   subject to the general requirements of similarity of conditions,
   reasonable proximity in time, and avoidance of confusion of the
   issues.

2. NEGLIGENCE—EVIDENCE—PRIOR ACCIDENTS—SIMILARITY OF CONDI-
   TIONS—NOTICE—RELEVANCE—PREJUDICE

   Admission of testimony about a prior accident in a negligence
   case was reversible error where the prior accident did not arise
   from the same cause as the plaintiff's accident, a similarity of
   conditions between the two accidents was never established, the
   prior accident was totally irrelevant to the issue of defendant's
   knowledge or notice of the hazard which allegedly caused
   plaintiff's injury, and the objectionable testimony was probably
   prejudicial.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 305, 307, 308, 312, 357.
   57 Am Jur 2d, Negligence §§ 54–63.
   Admissibility, on issue of defendant's negligence in respect of
   condition of place where plaintiff was injured, of evidence of prior
   accidents or injuries at same place. 70 ALR2d 167.
[3] 29 Am Jur 2d, Evidence §§ 275, 628.
   Admissibility of evidence of repairs, change of conditions, or precau-
   tions taken after accident. 64 ALR2d 1296.
[4] 29 Am Jur 2d, Evidence §§ 214, 215.
   57 Am Jur 2d, Negligence §§ 317, 318.
[5] 75 Am Jur 2d, Trial § 630.
[6] 5 Am Jur 2d, Appeal and Error § 553.
   75 Am Jur 2d, Trial § 906.
[7] 75 Am Jur 2d, Trial §§ 624, 625.

3. Negligence—Evidence—Subsequent Repairs—Impeachment.

Testimony concerning subsequent repairs in a grease-pit area, in a negligence case arising out of a fall into the grease pit of a service garage, was admissible to impeach a witness who testified that no changes had been made.

4. Negligence—Contributory Negligence—Reasonable-Man Standard.

A plaintiff was not contributorily negligent as a matter of law where, when reviewing the evidence in the light most favorable to plaintiff, reasonable men could reach different conclusions as to whether plaintiff had acted as a reasonable and prudent man under all the circumstances.

5. Negligence—Instructions to Jury—Duty of Care—Unnecessary Repetition.

Unnecessary repetition in jury instructions on a defendant's duty of care in a negligence case may constitute error.

6. Appeal and Error—Jury Instructions—Failure to Object.

Alleged error in jury instructions has not been preserved for appellate review where no objection was made before the jury retired to consider the verdict.

Dissent by V. J. Brennan, J.

7. Negligence—Evidence—Prior Accidents—Jury.

*Admission of testimony in a negligence suit about a prior accident which later testimony showed to be different in nature from the plaintiff's accident was not reversible error where the jury was made fully aware of the difference between the two accidents, they were fully aware of the history and kinds of accidents that had occurred at the place of plaintiff's accident, and they did not go to the jury room confused or uncertain on the past-accident question.*

Appeal from Wayne, Peter B. Spivak, J. Submitted Division 1 December 3, 1974, at Detroit. (Docket No. 18162.) Decided March 24, 1975. Leave to appeal denied, 394 Mich 788.

Complaint by Alexander J. Narring against Sears, Roebuck & Company for damages for injuries resulting from a fall into a grease pit at a

service garage. Judgment for plaintiff. Defendant appeals. Reversed and remanded for a new trial.

*Lopatin, Miller, Bindes & Freeman* (by *Michael A. Gantz*), for plaintiff.

*Garan, Lucow, Miller, Lehman, Seward & Cooper* (by *John C. Patrick, Jr.*), for defendant.

Before: J. H. GILLIS, P. J., and V. J. BRENNAN and PETERSON,* JJ.

J. H. GILLIS, P. J. On July 21, 1972, plaintiff fell into a grease pit in the service garage at one of defendant's stores, and was badly injured. Plaintiff brought this action, alleging that defendant's negligence in operating this grease-pit area without proper safeguards was the proximate cause of his injuries.

Plaintiff testified as follows: He had entered defendant's garage seeking shelter from the rain, and was waiting there for a friend to pick him up and give him a ride home. He was standing just inside the garage with several other people when three women and a child came into the garage, crowding plaintiff and the others backwards. When plaintiff stepped back to make room for the newcomers, he fell backwards into the grease pit.

Other witnesses testified that plaintiff walked into the garage, and, while lighting a cigarette, continued walking up to the edge of the grease pit, and fell into the grease pit face forward.

At the close of plaintiff's case, defendant moved for a directed verdict on the basis that the evidence showed that plaintiff had been contributorily negligent as a matter of law. The trial court denied this motion and the jury returned a verdict

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in favor of plaintiff, awarding him $30,000 damages. Defendant appeals as of right.

Defendant raises several issues for our consideration, only one of which merits extended discussion. Additional facts will be set forth as are necessary to the discussion of these issues.

Defendant's most meritorious claim of error is that the trial court erred in allowing plaintiff to introduce testimony concerning the occurrence of previous grease-pit accidents which arose from causes different from the cause of plaintiff's accident. Defendant further contends that the trial court erred in not declaring a mistrial on the basis of this testimony and plaintiff's counsel's frequent references throughout the trial to previous instances of persons falling into the grease pit.

Plaintiff's counsel said, in his opening statement:

"[O]ur proofs will show that Sears Roebuck knew of this situation on their place of business because they had other employees and people that had fallen into the pit area."

Defendant objected to this statement, and moved for a mistrial. The trial court asked plaintiff's counsel if evidence was going to be produced to support this statement. Plaintiff's counsel assured the court that the deposition testimony of one Anthony Hobbs, a Sears garage employee at the time of the accident, would support plaintiff's claim. On the strength of these assurances, the trial court denied defendant's motion for a mistrial. Twice more in his opening statement, plaintiff's counsel made reference to previous accidents, saying the proofs would show "that other employees have fallen into the area" and that "they [defendant] have had problems when in the past people had fallen into the pit".

During plaintiff's attorney's cross-examination of Marshall Dyke, a Sears sales superintendent, the following testimony was given:

"*Q.* Before July 21st, 1972, were there any incidents reported to you of persons falling into the pit, either employees or customers at this store?

"*A.* No, sir.

"*Q.* Have you had occasion to read Mr. Hobbs' depositions? * * * He indicated, did he not, in his deposition, which was sworn testimony, under oath, that there had been employees that had fallen into the pit and other personnel?

\*   \*   \*

"*Q.* In your capacity as sales superintendent at Sears were you aware of any incidents involving employees or other persons that were in the garage area that fell into the pit before July 21st, of 1972?

"*A.* No, sir.

"*Q.* So, when Mr. Hobbs, whose deposition you read, indicated that there were other employees that had fallen into the pit that he had witnesses, you don't disagree with that even though—

"*A.* I did not read that far into the deposition.

"*Q.* Well, let me have you take a look at page 39 and see if that is what he says.

"*A.* It says that he never seen anyone fall into the pit.

"*Q.* What did he say?

"*A.* 'Saw one of the guys slipped in there once in a while.' "

At this point defense counsel objected to the use of Mr. Hobbs' deposition as a basis for cross-examination of Mr. Dyke. He argued that Mr. Hobbs' statements concerning previous accidents were hearsay, since Mr. Hobbs had testified at the deposition that he had no personal knowledge of any previous accidents. The trial court overruled the hearsay objection, apparently on the rationale that

Mr. Hobbs' deposition testimony with respect to prior accidents was ambiguous and capable of being received as nonhearsay. Plaintiff's counsel once more asked Mr. Dyke if he was aware "of any incidents which arose where people had fallen into the grease-pit area" prior to plaintiff's accident, to which Mr. Dyke replied in the negative.

On cross-examination of Anthony Hobbs by plaintiff's counsel, the following testimony was given:

"*Q.* And you have seen people fall in the pit before, haven't you?

"*A.* No, I have not. * * * No, I have not seen anybody fall into that pit before.

"*Q.* You never have. Do you remember your deposition being taken?

"*A.* I remember. I never said I seen anybody fall. I said I heard.

* * *

"*Q.* You are aware, aren't you, sir, since you worked at Sears, that other people have fallen into the pit?

"*A.* I go by what I heard.

"*Q.* But, were you aware from talking with other employees that other people had fallen into that pit?

"*A.* Yes, I was.

"*Q.* Sure you were."

This line of questioning was objected to at its beginning by defense counsel; however, no basis for the objection was specified.

On redirect examination of Mr. Hobbs by defense counsel, the testimony below was elicited:

"*Q.* You indicated, I think, on cross-examination that you had not seen anyone else fall, but that you had heard, I think, of other people falling into the pits?

"*A.* Right.

"*Q.* Was that more than once that people were involved?

"*A.* All I heard was just once.

"*Q.* Once?

"*A.* Right.

"*Q.* Do you have any idea whether this person was an employee or customer?

"*A.* It was an employee.

"*Q.* Was that when you were working there?

"*A.* No, it was not.

"*Q.* Was that prior to your—

"*A.* Before I got there.

"*Q.* Before you got there. Was this person who fell, as Mr. Narring did, all the way to the bottom of the pit?

"*A.* No.

"*Q.* What were the circumstances of that?

\* \* \*

"*A.* Well, there is a ladder in there that you can go up or down and if you don't want to go down the back stairway—it gets greasy at times and you can kind of slip off the ladder.

"*Q.* Mr. Hobbs, have you ever heard of anyone falling down from the top into the pit?

"*A.* No, I did not.

"*Q.* Have you ever seen anyone?

"*A.* No, I did not."

During recross-examination of Mr. Hobbs by plaintiff's attorney, the following testimony was given:

"*Q.* Do you recall this question being asked of you on deposition and your answer being given and this is the deposition that was taken in December of 1972. \* \* \* Do you recall this: '*Q.* Have you ever seen anyone fall into this pit when you were working there? '*A.* No, I have not. I have not seen anybody fall in there. Before, not while I was working there, someone—one guy—one of the guys employed, he slipped in there once in a while.' Would that mean more than once if he slipped in there once in a while?

"*A.* Yes, it would mean more than once.

"*Q.* It would be more than once?

"*A.* Yes, sir.

\*    \*    \*

"*Q.* So, therefore, you were aware that one of the employees there had slipped in there once in a while?

"*A.* Off the ladder.

"*Q.* But, you knew that Sears knew that people could fall \* \* \* ?"

Defense counsel objected to this last question, on the basis that Mr. Hobbs' testimony did not establish knowledge on the part of Sears. The objection was overruled, but the question was not repeated and no answer to it was given.

Plaintiff's counsel also asked witness Fred Augustus, a Sears garage employee, whether he had ever seen people fall into the pit before plaintiff's accident, to which Mr. Augustus responded in the negative.

In his closing argument, plaintiff's attorney said:

"Now, they [defendant] are on notice that people can fall into the pit. Don't you think that if they are on notice that people can fall into the pit, let's do something to prevent it from happening again."

Defendant's objection that this argument was irrelevant was overruled. Plaintiff's counsel again stated, in his rebuttal argument: "They [defendant] knew that other people had fallen in there \* \* \* ."

This record raises a serious question concerning the propriety of showing the occurrence of a previous accident solely by the testimony of a witness who had not seen the accident, but had been told of the accident by other persons. However, we do not have to decide this question since, even had

the previous accident been shown by unquestionably admissible evidence, the admission of such evidence to show this particular accident would still have been error.

In *Freed v Simon,* 370 Mich 473, 475; 122 NW2d 813, 814 (1963), the Michigan Supreme Court held:

" '[T]he rule now seems to be established that evidence of prior accidents at the same place and arising from the *same cause* is admissible * * * to show defendant's notice or knowledge of the defective or dangerous condition alleged to have caused the accident * * * .' [*Sullivan v Detroit & Windsor Ferry Co,* 255 Mich 575, 579; 238 NW 221 (1931).]" (Emphasis supplied.)

The Court in *Freed, supra,* also stressed that the introduction of such evidence is

" '[s]ubject to the general requirements of similarity of conditions, reasonable proximity in time, and avoidance of confusion of issues.' [70 ALR2d 167, 172, 174.]" *Freed v Simon,* 370 Mich 473, 475; 122 NW2d 813, 815 (1963).

It is obvious that the previous accident shown in the instant case did not arise from the same cause as plaintiff's accident, nor was the foundational requirement of similarity of conditions between the two accidents ever established. The alleged prior accident involved an employee slipping on a greasy ladder while ascending from or descending into the grease pit. Plaintiff's accident was one where a customer unfamiliar with the garage area entered that area and somehow toppled from the edge of the pit. The first sort of accident is totally irrelevant to the issue of defendant's knowledge or notice of the hazard which plaintiff alleged to be the cause of his fall and injuries.

In a case factually very similar to the instant

case, *Kinney v Mason Elevator,* 37 Mich App 344; 194 NW2d 408 (1971), the reading of deposition testimony relating to prior accidents at the site of plaintiff Kinney's accident was held to be error, since the record showed that the previous accidents arose from different causes than did Mr. Kinney's mishap. The admission of this testimony in the *Kinney* case was furthermore held to be reversible error for, as the Court said:

"From the general verdict that was returned in this case, this Court is unable to ascertain whether or not the jury considered the improperly admitted evidence, and we cannot say the objectionable testimony was not prejudicial." *Kinney v Mason Elevator,* 37 Mich App 344, 347; 194 NW2d 408, 409 (1971).

In the instant case we cannot say the objectionable testimony was not prejudicial. In fact, this testimony was quite probably prejudicial, because of plaintiff's emphasis on the previous "accident*s",* his many questions concerning them, and his persistent statements throughout the trial that "people" and "employee*s"* had previously "fallen into" the pit. Therefore, we hold that admission of the testimony concerning the previous accident was reversible error, and that a new trial must be granted.

Defendant's remaining assignments of error will be briefly discussed because of the grant of a new trial.

The portions of plaintiff's closing argument which developed the theme of "[b]ig business against Mr. Narring, an 84-year old man" were improper and should not be repeated at the new trial. Although we need not now decide whether this argument, standing alone, was so prejudicial

that it would require reversal, we note that plaintiff's counsel

"* * * deliberately, with a calculated risk that the error would be declared harmless, injected a prejudicial statement into the proceedings * * * [and that] [a]ttorneys who attempt such tactics should realize they risk a reversal." *Cachola v The Kroger Co,* 32 Mich App 557, 559; 189 NW2d 112, 113 (1971).

The brief testimony concerning subsequent changes in the grease-pit area was properly admitted for the purpose of impeachment of Mr. Dyke's previous testimony that no changes had been made in that area since plaintiff's accident. *Denolf v Frank L Jursik Co,* 54 Mich App 584; 221 NW2d 458 (1974).

The trial court did not err in denying defendant's motion for a directed verdict on the basis that the evidence showed plaintiff's contributory negligence as a matter of law. There was conflicting testimony as to how plaintiff had fallen into the grease pit. Reviewing this evidence in the light most favorable to plaintiff, reasonable men could reach different conclusions as to whether plaintiff had acted as a reasonable and prudent man under all the circumstances. The trial court's denial of defendant's motion for a directed verdict was therefore proper. *Desmarais v Myefski,* 20 Mich App 436; 174 NW2d 174 (1969).

The trial court's instructions to the jury on defendant's duty of care were not unnecessarily repetitive in violation of *Mack v Precast Industries, Inc,* 369 Mich 439; 120 NW2d 225 (1963). Moreover, those instructions were not objected to before the jury retired, and thus this question has not been properly preserved for appeal. *Heckel v*

*American Coupling Corp,* 16 Mich App 712; 168 NW2d 904 (1969).

Defendant's claim that the amount of damages awarded was so excessive as to shock the conscience need not be dealt with since a new trial has been granted.

The judgment below. is reversed, and the case remanded for a new trial. Costs to appellant.

PETERSON, J., concurred.

V. J. BRENNAN, J., *(dissenting).* Since my reading of the entire record here leads me to a different conclusion than that reached by my colleagues, I must dissent. The civil-advocacy structure allows for the tenacious pursuit of circumstances that arise in lawsuits which may be favorable, upon closer inquiry, to the position of one of the parties. If plaintiff's attorney was guilty of any exaggeration as to the amount of previous accidents, and I'm not convinced he was, it was not reversible error.

Plaintiff's counsel learned in pretrial depositions of defendant's employees that there had been previous accidents involving this pit. This was brought to his attention by the deposition of Mr. Anthony Hobbs, a Sears' garage employee at the time of the accident. The following is the testimony of Mr. Hobbs on recross-examination by plaintiff's counsel:

"*Q.* Do you recall this question being asked of you on deposition and your answer being given and this is the deposition that was taken in December of 1972. * * * Do you recall this: 'Q. Have you ever seen anyone fall into this pit when you were working there? A. No, I have not. I have not seen anybody fall in there. Before, not while I was working there, someone—one guy—one of the guys employed, he slipped in there once in a

while.' Would that mean more than once if he slipped
in there once in a while?
"*A.* Yes, it would mean more than once.
"*Q.* It would be more than once?
"*A.* Yes, sir."

The disclosure of these facts during pretrial
depositions clearly put plaintiff on notice that
there had been other accidents. At this point it
became plaintiff counsel's duty to pursue that line
of questioning. Defendant later introduced evi-
dence showing that the previous accidents de-
scribed by Mr. Hobbs were not of the same nature
that plaintiff endured and the record shows that
the jury was made fully aware of this.

The record clearly shows that there had been at
least one previous accident in this pit although it
did not occur in the same manner as plaintiff's.
The record also shows that the defense more than
adequately answered each and every allegation of
plaintiff and thoroughly cross-examined all the
witnesses so that by the conclusion of the trial the
jury was made fully aware of the entire history
and kinds of accidents that occurred in this pit
area. They did not go to the jury room confused or
uncertain as to the past-accident question. This
question was handled extensively on direct and
cross-examination through various witnesses until
finally it became the jury's task to weigh all the
evidence and reach a verdict, which they did.

Aside from the claims of previous accidents,
there was more than sufficient proof to show negli-
gence on behalf of the defendant in the mainte-
nance of this pit area. I am convinced that plain-
tiff maintained his burden of proof in this case and
that the jury was similarly convinced that defend-
ant was negligent. The proofs presented herein
more than supported the verdict.

I would affirm.