PALMITER v MONROE COUNTY BOARD OF ROAD
COMMISSIONERS

Docket No. 77959. Submitted February 19, 1985, at Detroit.—Decided
March 17, 1986. Leave to appeal applied for.

Plaintiff, Walter L. Palmiter, after sustaining injuries in a single-car accident which rendered him a paraplegic, filed suit in Monroe Circuit Court against defendant, Monroe County Board of Road Commissioners. Plaintiff alleged that defendant or its employees (1) breached their duty to maintain the roadway involved in a reasonably safe condition and fit for travel, and (2) negligently operated or maintained a tanker truck used to spray liquid calcium chloride on unpaved roads abutting the roadway involved. After trial, the jury returned a special verdict in favor of defendant. The circuit court, Daniel L. Sullivan, J., denied plaintiff's motion for a new trial. Plaintiff appealed from the jury's verdict and the circuit court's denial of the motion for a new trial. *Held:*

1. The rule of evidence on subsequent remedial measures articulates a basic rule of common law that, generally, evidence of repairs, changes in conditions, or precautions taken after an incident is not admissible as proof of negligent or culpable conduct. The primary ground for excluding this type of evidence rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety. The rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

2. The circuit court properly excluded evidence offered by plaintiff to prove that defendant spread sand over the roadway after the accident. The presence of calcium chloride on the

REFERENCES

Am Jur 2d, Evidence §§ 275, 628.

Am Jur 2d, Municipal, School, and State Tort Liability §§ 57, 58

Admissibility of evidence of subsequent repairs or other remedial measures in products liability cases. 74 ALR3d 1001.

Modern status of the law as to validity of statutes or ordinances requiring notice of tort claim against local governmental entity. 59 ALR3d 93.

surface of the roadway and the fact that in sufficient quantities it would cause the roadway to be slippery were admitted by defendant's employees. However, the Court of Appeals failed to see how proof that defendant had spread sand would show how much calcium chloride was on the roadway.

3. Michigan case law thus far has considered the impeachment exception to the subsequent remedial measures rule only in relation to a denial of the repair itself. However, the cases do not hold that the impeachment exception is limited to direct contradiction of a statement. The contradictory evidence may be either direct or circumstantial. The circuit court, in its discretion, could have allowed plaintiff to introduce evidence of sand spreading by defendant to impeach testimony by an employee of defendant that there were only small amounts of calcium chloride on the roadway and that the roadway was not slippery. Nevertheless, plaintiff was not prejudiced by the circuit court's ruling on this point. Thus, no reversible error occurred.

4. The circuit court did not err in refusing to admit into evidence a sample of liquid calcium chloride as part of plaintiff's attempt to impeach the testimony of an employee of defendant that the liquid was sticky. The circuit court properly exercised its discretion under MRE 403 to exclude the exhibit although it may have been relevant. The fact that the liquid is sticky to the touch has little bearing on the issue of its effect on asphalt.

5. The circuit court did not err in admitting into evidence, under the rules of evidence on prior statements of witnesses and hearsay, a transcribed statement given by the plaintiff to a sheriff's deputy one week after the accident in which plaintiff admitted that he was driving at 40 or 50 miles per hour. Plaintiff, having stipulated to the statement's admission into evidence, waived any necessity for defendant to lay a foundation for the admission of the statement.

6. The circuit court did not err in admitting into evidence the testimony of a witness whose car was passed by plaintiff shortly before the accident. The witness's testimony was relevant and proper for the jury to consider.

7. Plaintiff was not unduly prejudiced by the circuit court's ruling that evidence indicating that plaintiff's car was equipped with a tachometer was admissible, despite the circuit court's pretrial order specifically excluding evidence of the tachometer on the basis that it tended to show that plaintiff was a "hot rod".

8. The circuit court did not err in refusing to allow plaintiff

to prove that the calcium chloride spraying apparatus was defectively designed and constructed. The court, on the basis of relevancy, properly denied admission of plaintiff's proffered proof thereof in the form of a videotaped presentation by a former employee of defendant who had operated the apparatus and the testimony by defendant's chief mechanic regarding changes which could have been made to the spraying apparatus.

9. The circuit court properly refused to give an instruction to the jury that defendant had liability insurance or that a judgment against defendant would not affect the jurors' taxes. Evidence of liability insurance is generally inadmissible. Plaintiff did not fall within any exceptions to the rule.

Affirmed.

SHEPHERD, J., concurred. He agreed that the circuit court did not err in refusing to admit into evidence the fact of the spreading of the sand on the roadway after the accident. However, he noted that the presence of the calcium chloride on the roadway and the fact that the roadway would therefore be more slippery than without the calcium chloride were conceded by defendant and that, therefore, the existence of the sand would not have substantially contributed to the proof of those facts.

### OPINION OF THE COURT

1. NEGLIGENCE — EVIDENCE — SUBSEQUENT REMEDIAL MEASURES — RULES OF EVIDENCE.

The rule of evidence on subsequent remedial measures articulates a basic rule of common law that, generally, evidence of repairs, changes in conditions, or precautions taken after an incident is not admissible as proof of negligence or culpable conduct; the primary ground for excluding this type of evidence rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety; the rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment (MRE 407).

2. NEGLIGENCE — EVIDENCE — SUBSEQUENT REMEDIAL MEASURES — IMPEACHMENT — RULES OF EVIDENCE.

Michigan case law thus far has considered the impeachment exception to the subsequent remedial measures rule only in relation to a denial of the repair itself; however, the cases do not hold that the impeachment exception is limited to direct

contradiction of a statement; contradictory evidence may be either direct or circumstantial (MRE 407).

3. TORTS — EVIDENCE — LIABILITY INSURANCE — JURY — RULES OF EVIDENCE.

Generally, evidence of liability insurance is inadmissible; a plaintiff who sues a government agency which has liability insurance is not entitled to a jury instruction that informs a jury that the defendant has insurance and that a judgment against the defendant would not affect the jurors' taxes (MRE 411).

CONCURRENCE BY SHEPHERD, J.

4. NEGLIGENCE — EVIDENCE — SUBSEQUENT REMEDIAL MEASURES — RULES OF EVIDENCE.

*In a claim by a motorist, who is injured in an accident, alleging negligence on the part of a county board of road commissioners for failure to keep roads in a reasonably safe condition, it would be error for a trial court to admit evidence offered by the motorist to prove the existence of a hazardous condition if the same proof would show that subsequent remedial measures were taken by the county board of road commissioners after the motorist's accident (MRE 407).*

*Czeryba, Dulany & Godfroy* (by *Dennis J. Czeryba*), for plaintiff.

*William J. Braunlich, Jr., P.C.* (by *William H. Braunlich* and *William J. Braunlich, Jr.*), for defendant.

Before: WAHLS, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

WAHLS, P.J. Plaintiff was injured in a single-car accident on June 16, 1976, and rendered a paraplegic. He commenced an action to recover damages arising out of the accident and claimed that defendant or its employees (1) breached their duty to maintain the road in a reasonably safe condition and fit for travel, and (2) negligently operated or maintained a tanker truck used to spray liquid

* Circuit judge, sitting on the Court of Appeals by assignment.

calcium chloride on unpaved roads. Following trial
in October and November, 1983, the jury returned
a special verdict in favor of defendant. Plaintiff's
motion for a new trial was denied, and he appeals
as of right. We affirm.

Plaintiff was driving north on Lewis Avenue, a
two-lane asphalt road in Monroe County, shortly
before 9:00 a.m. After passing another northbound
vehicle in a 35 mph zone, he lost control of his car,
which left the road, crossed a residential yard,
continued across an open creek, hit the north
embankment and catapulted in the air before
coming to rest.

Plaintiff contends that the accident resulted
from a slick road surface due to significant liquid
calcium chloride deposits left there by a road
commission employee, Milivoy Knezevich, who had
been spraying the liquid on unpaved roads abut-
ting Lewis Avenue. Defendant denies that the
calcium chloride on the road created a slippery
condition and attributes the accident to plaintiff's
excessive speed.

I

Plaintiff argues that the trial court erred in
excluding evidence that defendant's employees
spread sand on Lewis Avenue soon after the acci-
dent. In denying plaintiff's motion for a new trial,
the court concluded that its:

"* * * ruling prohibiting introduction of evidence of
subsequent remedial measures undertaken by the Road
Commission was soundly based upon MRE 407, and was
consistent with the public policy encouraging safety
related conduct following an accident; no prejudice or
jury confusion was occasioned by exclusion of this evi-
dence".

A

The issue of the admissibility of evidence of

subsequent remedial measures first came before
the trial court on defendant's motion to limit
discovery, filed on August 8, 1977. The motion was
denied because of the possibility that the evidence
might be admitted at trial for purposes constitut-
ing exceptions to the general rule of exclusion. On
February 22, 1982, defendant filed a motion to
exclude the evidence pursuant to MRE 407. The
court granted the motion, noting that ownership,
control and feasibility of precautionary measures
was not controverted and that no one had testified
to the nonexistence of sand on the roadway or
made other statements that would be *directly*
impeached by evidence of the sand. The court did,
however, leave open the way for plaintiff to bring
a future motion and lay a clear foundation for an
exception to the rule.

On October 13, 1982, plaintiff filed a motion to
admit two deposition transcripts in their entirety,
including statements regarding spreading sand.
Plaintiff wished to use the statements to impeach
the position of defendant and the witnesses as to
the amounts and location of calcium chloride on
the road and that the road was not slippery. The
court denied the motion and certified a final order.
This Court denied leave to appeal on March 30,
1983, and the Supreme court did likewise on May
17, 1983. 417 Mich 994 (1983).

At trial, plaintiff was limited to using edited
versions of the two deposition transcripts. He also
was unable to introduce photographs of the road
taken after the sand was spread.

## B

MRE 407, captioned "Subsequent Remedial Mea-
sures", states:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

Plaintiff now contends that the above rule is inapplicable to the instant case, although, at the trial level, he conceded that evidence of the sand spreading was inadmissible to prove negligence and, in effect, conceded that MRE 407 applied. Nevertheless, because the applicability of the rule is a necessary starting point for proper consideration of the trial court's rulings, we will consider plaintiff's arguments.

Bernard Bauer, the district foreman for the road commission, testified at his deposition that the road was not slippery after the accident but he ordered that sand be spread to prevent a slippery condition from developing. Plaintiff now relies on this testimony in arguing that the sand spreading was not a subsequent remedial measure because, if it had been spread prior to the accident, it would not have made the accident "less likely to occur". However, we think it proper to look at plaintiff's intended use of the evidence of sand spreading. Plaintiff's position generally is that the sand spreading tends to prove that the road was already slippery. Furthermore, were plaintiff to impeach Bauer with the evidence, the implication would arise that Bauer knew it was slippery. We believe that for these reasons MRE 407 is applicable to this case. *Cf., Grawey v Genesee County Bd of Road Comm'rs,* 48 Mich App 742; 211 NW2d 68 (1973) (general rule prohibiting evidence of subse-

quent repairs applied where defendant alleged
that road was resurfaced on scheduled basis, not
because of needed repairs).

Plaintiff asserts that defendant would have
spread sand on the road in any event, because it
had a duty to maintain the roads in a condition
reasonably safe and fit for travel and because it
would seek to reduce future claims which would
increase insurance costs. For these reasons, plain-
tiff argues that rule 407 is either inapplicable or at
least should not be interpreted to exclude evidence
when offered for some purpose other than proving
negligence or culpable conduct. Plaintiff's argu-
ment is not a new one. Our Supreme Court, ac-
knowledging criticism of the subsequent repairs
exclusion, has stated,

"It goes without saying that market forces (the desire to
prevent future costly lawsuits) and a manufacturer's
duty to warn, generally, * * * will operate to encourage
the adoption of appropriate remedial measures. The
proposed extension of an evidentiary rule beyond its
intended meaning will not provide any significant fur-
ther encouragement of safety activities." *Downie v Kent
Products, Inc,* 420 Mich 197, 211-212; 362 NW2d 605
(1984), *modified on other grounds* 421 Mich 1202 (1985).

On the other hand, as plaintiff admits, it is not
for us to apply the rule short of its intended
meaning. MRE 407 articulates a basic rule of
Michigan common law that "[g]enerally, evidence
of repairs, changes in conditions, or precautions
taken after an incident is not admissible as proof
of negligence or culpable conduct". *Downie, supra,*
p 208. The primary ground for excluding this type
of evidence "rests on a social policy of encouraging
people to take, or at least not discouraging them
from taking, steps in furtherance of added safety".
*Downie, supra,* p 211, quoting Advisory Committee

Note, FRE 407, *Denolf v Frank L Jursik Co,* 395 Mich 661, 667; 238 NW2d 1 (1976). Exclusion of such evidence is also defended in terms of relevancy. *Downie, supra,* p 210 and fn 11. MRE 407 "encourages persons to improve their products, property, services and customs without risk of prejudicing any court proceeding and consequently delaying implementation of improvements". *Smith v E R Squibb & Sons, Inc,* 405 Mich 79, 92; 273 NW2d 476 (1979).

"The general rule prohibiting evidence of subsequent repair should be adhered to unless there is a clear foundation for an exception to the rule." *Grawey, supra,* p 751. MRE 407 provides that evidence of subsequent measures may be admitted for impeachment or for other purposes, if controverted. Testimony competent for one purpose cannot be excluded because it is incompetent for another purpose. *Sykes v Village of Portland,* 193 Mich 86, 97; 159 NW 325 (1916). See MRE 105. We turn now to plaintiff's claim that the evidence of sand spreading should have been admitted pursuant to exceptions to the general exclusionary rule.

C

Plaintiff argues that the evidence of sand spreading should have been admitted for the purpose of showing the prior condition of the road. Plaintiff asserts that the evidence is relevant to show the existence, quantity and location of the calcium chloride on the road and establish the fact that it was slippery.

The issue here is not so much whether the evidence of subsequent measures is relevant to an issue other than negligence, but what care must be taken in determining whether relevant evidence

will be admitted. The appellate courts of this state have not addressed this issue in detail.[1]

Professor McCormick recommends a cautious approach, as follows:

"It is submitted that before admitting the evidence for any of these other purposes, the court should be satisfied that the issue on which it is offered is of substantial importance and is actually, and not merely formally in dispute, that the plaintiff cannot establish the fact to be inferred conveniently by other proof, and consequently that the need for the evidence outweighs the danger of its misuse." McCormick, Evidence (2d ed), § 275, pp 668-669 (footnotes omitted).

In ruling on the parties' motions in this case, the court below clearly subscribed to this approach in deciding if plaintiff had shown "a clear foundation for an exception to the rule", *Grawey, supra.*

The Advisory Committee Note to FRE 407 states:

"The requirement that the other purpose be controverted calls for automatic exclusion unless a genuine issue be present and allows the opposing party to lay the ground work for exclusion by making an admission. Otherwise the factors of undue prejudice, confusion of issues, misleading the jury, and waste of time remain for consideration under Rule 403."

---

[1] In *Alberts v Village of Vernon,* 96 Mich 549, 551; 55 NW 1022 (1893), no error was committed in receiving testimony that a defective sidewalk was taken up and repaired. The record indicated "that the removal of the walk, affording the opportunity to learn particularly its condition, was the point aimed at". Significantly, no objection was made at trial. In *Wincher v Detroit,* 144 Mich App 448; 376 NW2d 125 (1985), that the plaintiff was precluded from admitting a policy statement released after an event as proof that no such policy existed at the time of the event. This Court affirmed, stating simply that it believed that the plaintiff was merely seeking to prove negligence.

The one rule firmly established in this area is that a party is entitled to a limiting instruction upon request. *Judis v Borg-Warner Corp,* 339 Mich 313, 325; 63 NW2d 647 (1954), and cases cited therein; see MRE 105.

MRE 403 permits the exclusion of relevant evidence if its probative value is "substantially outweighed" by the stated dangers. MRE 403 thus appears to state the balance between needs and danger in a manner more favorable to the proponent of evidence than that which McCormick recommends. The trial court's reliance on McCormick therefore may have placed on plaintiff a greater burden in laying a foundation for admission of evidence of subsequent remedial repairs than is proper under present law.

Nevertheless, we are not disposed to reverse. Plaintiff asserts that the conditions existing on Lewis Avenue at the time of the accident were crucial and hotly contested and that the most revealing and reliable evidence available was the evidence of the spreading of sand as to the locations where it was spread and the quantities of sand that were spread. To the extent that plaintiff relies on photographs taken after the sand was spread, we are unable to review his claim because the photographs have not been included in the record before us. *Lemanski v Ford Motor Co,* 82 Mich App 244, 248-249; 266 NW2d 775 (1978). Apart from the photographs, we are not persuaded that the excluded testimony concerning the sand spreading was very revealing or reliable as to whether or where slippery conditions existed on the road. The sand was not simply spread where there were calcium chloride patches or tracks but was spread with the intention of covering the entire northbound lane of Lewis Avenue in the vicinity of two gravel roads which had been sprayed. Plaintiff does not claim that there was a coat of calcium chloride covering the lane coextensive, or nearly so, with the sand. Thus, we fail to see how proof of the area covered by sand would show how much calcium chloride was on the road.

Defendant's employees testified that there was liquid calcium chloride on Lewis Avenue at the intersections with two gravel roads, tracked there by the spray truck's wheels and dribbled from the spraying apparatus. In closing argument, defense counsel acknowledged that: "The drippage and trackage is no proof problem for Plaintiff. The Defendant Road Commission employees told them about it." Defendant's employees also testified that the calcium chloride could be slippery in sufficient quantities. Defense counsel acknowledged this also in closing argument:

"Okay, everybody's talking about slippery. Let's go back to that for a minute. Is it any feat of logic to understand that a liquid applied to a roadway, any liquid, is going to be slipperier than a dry pavement? I take it, it's no feat. You don't need a Ph.D., you don't need a Masters, you don't need any level of education to understand that. That liquids made a hard surface slipperier. That isn't the question."

Defense counsel stated the question as whether a hazardous condition existed, a situation where a vehicle would lose control. Whether evidence of the sand spreading should have been admitted to prove a hazardous condition will be addressed below in conjunction with plaintiff's impeachment argument. Suffice it to say that the existence of the calcium chloride and whether it could be slippery were not genuinely in issue.

D

Plaintiff argues that the evidence of sand spreading should have been admitted for the purpose of impeaching Bauer's testimony that there were only small amounts of calcium chloride on Lewis Avenue and no slippery condition existed. Bauer was the foreman who made the decision and ordered that the sand be spread.

Plaintiff acknowledges that Michigan case law thus far has considered the impeachment exception to the subsequent remedial measures rule only in relation to a denial of the repair itself. *Cody v Marcel Electric Co*, 71 Mich App 714, 722-723; 248 NW2d 663 (1976), *lv den* 399 Mich 851 (1977) (statement by expert that no guard could be installed was properly impeached by evidence that nonparty had installed guard), *Narring v Sears, Roebuck & Co*, 59 Mich App 717, 727; 229 NW2d 901 (1975), *lv den* 394 Mich 788 (1975) (testimony regarding subsequent changes was proper impeachment of testimony that no changes were made), *Little v Borman Food Stores, Inc*, 33 Mich App 609, 613-614; 190 NW2d 269 (1971) (evidence that rock salt was spread two hours after slip and fall was admissible to impeach statement that sidewalk was not salted that day). See *Denolf v Frank L Jursik Co*, 54 Mich App 584, 592; 221 NW2d 458 (1974), *rev'd on other grounds* 395 Mich 661; 238 NW2d 1 (1976). Plaintiff argues, however, and we agree, that the cases do not hold that the impeachment exception is limited to direct contradiction of a statement. The contradictory evidence may be either direct or circumstantial. See *Rimkus v Northwest Colorado Ski Corp*, 706 F2d 1060 (CA 10, 1983); *Patrick v South Central Bell Telephone Co*, 641 F2d 1192 (CA 6, 1980), *Hatfield v Levy Bros*, 18 Cal 2d 798; 117 P2d 841 (1941).

The case law from other jurisdictions supports permitting the desired impeachment in this case. Nevertheless, concluding that the trial court, in its discretion, could have allowed the impeachment does not mean that reversible error occurs where the court has disallowed the evidence. We do not find that plaintiff was prejudiced in this case.

First, we note that evidence of sand spreading only indirectly tends to prove a slippery or hazard-

ous condition. The connecting link is Bauer's belief regarding the condition of the road and his credibility in holding that belief. Bauer could believe the road was slippery when in fact it was not or, vice-versa, he could believe the road was not slippery when in fact it was. In this case, Bauer testified that he tested the road by braking his vehicle and found it was not slippery. His excluded testimony was that he ordered that sand be spread against the possibility of the road becoming slippery from more calcium chloride being tracked onto it from the abutting gravel roads. We think we can assume that, if the evidence of sand spreading had been admitted, Bauer's explanation would also have come before the jury. To conclude that the road was hazardous based on Bauer's full testimony, the jury would have had to reject Bauer's explanation as incredible, use the fact that he ordered that sand be spread as indicating a belief that the road was hazardous at the time of the accident and conclude that that belief was accurate based on Bauer's observation and knowledge and experience as a district foreman for the road commission.

Bauer died before trial and his testimony was preserved by deposition. The jury was thus afforded no opportunity to observe his demeanor, and, consequently, had no advantage over the trial court or over us in determining credibility. Contrary to plaintiff's position, we do not find Bauer's explanation incredible. Nor do we think that the possibility that the jury might have done so is of such magnitude as to suggest that the verdict might have been different if the impeachment were allowed. In short, any error was harmless.

Finally, we note that, while the trial court was not justified in setting a hard and fast rule permitting only direct impeachment, the purposes of the

court's ruling were served in this case. Whether
the jury would believe that Bauer's explanation
for the sand spreading was credible or not would
be influenced greatly by the persuasiveness of the
attorneys' arguments as to what inferences should
be drawn. We believe that, on the facts of this
case, the parties' arguments would tend to be very
similar to arguments on negligence, thus tending
to prejudice defendant contrary to the intent of
MRE 407. We believe that the trial court was
justified in proceeding with caution to guard
against misuse of the evidence of sand spreading.

## II

Plaintiff argues that the trial court erred in
refusing to admit into evidence a sample of liquid
calcium chloride to impeach Jacob Beeker's testi-
mony that the liquid was sticky, rather than slip-
pery. Plaintiff contends that the jury may well
have believed that the roadway was covered with
liquid calcium chloride but that the liquid in-
creased friction propensities and created a safer
highway. We are not persuaded by this argument.[2]

Jacob Beeker was called by plaintiff as an ad-
verse witness pursuant to MCL 600.2161; MSA
27A.2161. He testified that he had felt chloride
and that it is sticky. The court ruled as follows on
plaintiff's motion to admit the sample:

"All right. Much evidence has been received in this
case already. We're in the 10th day of trial. The key
question as far as chloride is concerned to the jury is
what effect did it have on the surface of Lewis Avenue
at the scene of the accident and in that area on June
16th, 1976.

---

[2] We note *sua sponte* that plaintiff did not raise this issue in his
motion for new trial and, therefore, did not properly preserve it for
appeal. *Krzysiak v Hinton,* 104 Mich App 134, 139; 304 NW2d 823
(1981).

"That is what we are concerned about, we are not essentially concerned about chloride itself in liquid form; but what effect did it have on the surface of that highway.

"I excluded the video tape earlier today on the grounds that it was not a fair representation of Lewis Avenue as it existed on June 16th, 1976. I will not repeat everything I—that I said but that essentially was the reason for excluding it.

"I will also exclude the proposed exhibit of the Plaintiffs for essentially the same reason, and I think it is within the spirit of that prior ruling that it will not assist the jury in determining what the surface of the highway was like. This substance of itself in liquid form I feel would not be helpful to the jury. It's not denied that chloride is a liquid. Everyone knows that. Whether it is sticky or slippery in liquid form I also feel would have a tendency to confuse more than anything else; something—these terms are not mutually exclusive. Something could be sticky as well as slippery. Syrup is an example of that. You can throw syrup on the floor and it can be very, very sticky; but you could slip on it, and there are many other substances that would fit in that category."

We are satisfied that the court properly exercised its discretion pursuant to MRE 403 to exclude the exhibit although the liquid calcium chloride may have had some relevance under rule 401. We agree that Beeker's testimony, that the liquid is sticky to the touch, had little bearing on the issue of the liquid's propensities on asphalt.

### III

Plaintiff testifed at trial that the only thing he recalled about the day of the accident was that he had trouble starting his car that morning. On cross-examination, he was asked if he remembered making a statement to Deputy Lemerand approximately one week after the accident. Plaintiff ac-

knowledged that he vaguely remembered someone, but had no recollection of what was said, and, specifically, he did not recall the following statement:

"*Q* Do you know how fast you were going?
"*A* Forty. I don't know. Fifty, maybe. I can't really remember."

The trial court had previously denied plaintiff's motion *in limine* to exclude this statement on the basis that plaintiff had no recollection of the events or the statement and that it was "nothing more than a guess from a person in the hospital who's in a lot of pain". The court observed that the statement itself did not indicate that plaintiff had no recollection of the accident when the statement was made and that the statement conflicted with plaintiff's assertion that he recalled nothing and it was up to plaintiff to reconcile the two statements before the jury. In denying plaintiff's motion for a new trial, the court ruled that the statement was properly admitted pursuant to MRE 801(d)(2) and MRE 613.

Plaintiff argues on appeal that a reading of the transcribed statement given to the deputy reveals that plaintiff had very little memory concerning his actions immediately before the accident and no memory whatsoever concerning his speed. Plaintiff claims that his statement regarding speed was, therefore, inadmissible pursuant to MRE 602.[3] However, we have not been provided with the exhibit and must, therefore, base our review on

---

[3] MRE 602 provides in part:

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself."

the trial transcripts. It is clear that plaintiff had some memory of the accident at least until the time of his deposition in 1977, although he denied having any remaining recollection at the time of trial. We are not convinced that, at the time of his statement, plaintiff had no memory whatsoever of his speed. We find no error.

Plaintiff further argues that the transcribed statement was admitted without a foundation. However, the record reveals that plaintiff's counsel stipulated to admission of the statement subject to its entire contents being admitted. Counsel acknowledged that the court in its discretion could exclude inadmissible portions and, in fact, counsel himself requested that a reference to a "hot rod" be excluded. We are persuaded that plaintiff waived the necessity for defendant to lay a foundation.

IV

Plaintiff contends that the court erred during trial in reversing its pretrial position and permitting testimony by witness Darlene Dailey regarding plaintiff's speed almost a mile south of the accident scene. This issue was raised in plaintiff's motion for new trial and the court ruled that the evidence was relevant and not prejudicial.

Dailey's testimony was originally excluded pursuant to plaintiff's motion *in limine* based on the following assumptions: (1) plaintiff passed Dailey approximately one mile before the accident; (2) Dailey did not continue to observe plaintiff after the passing maneuver; and (3) within the subsequent mile through the town of Ida, plaintiff encountered a cautionary signal and speed limit changes from 55 mph to 35 mph, 35 mph to 25 mph and 25 mph back to 35 mph. The court

considered the passing maneuver to remote to have any bearing on plaintiff's speed at the time of the accident.

At trial, defendant requested reconsideration and presented Dailey to make an offer of proof. On a separate record, Dailey testified that the passing maneuver took place at the first change in speed limits, which was approximately seven-tenths of a mile before the spot where plaintiff lost control of his car. Furthermore, plaintiff continued to move away from her after completing the pass, establishing that he was exceeding the 35 mph speed limit. Defendant offered this testimony on three grounds: (1) to prove plaintiff's speed at the time of the accident, (2) apart from plaintiff's speed, to prove how close in time Dailey reached the scene of the accident (this related to her testimony regarding the condition of the road), and (3) to impeach plaintiff's claim that he habitually drove through town at the speed limit. In argument to the court, however, defendant asserted only the first and third grounds.

The court disallowed use of the evidence for impeachment but admitted it was relevant evidence for the jury to consider. The court noted that Dailey's testimony established that plaintiff's passing maneuver was not as remote from the accident as it had appeared to be prior to trial when plaintiff's motion *in limine* was heard, and further noted that there was other testimony presented to the jury as to what happened after plaintiff had entered the 25 mph speed zone. We find no abuse of discretion. *Zokas v Friend,* 134 Mich 437, 441; 351 NW2d 859 (1984).

Plaintiff contends on appeal that the court's mid-trial reversal of its prior order deprived him of the opportunity to deal with the issue either through further discovery depositions of Mrs. Dai-

ley or by obtaining additional witnesses to refute
her testimony. However, plaintiff did not request a
continuance or otherwise indicate to the trial
court that the change of position was a surprise
and prejudicial. We find no merit in this argu-
ment.

## V

Plaintiff argues that the trial court erred in
admitting testimony and evidence regarding preac-
cident alterations to his automobile, a 1971 Mer-
cury Comet. Plaintiff seems to have approved the
court's pretrial order permitting evidence of modi-
fications only to show the capabilities of the vehi-
cle and not to show or imply anything regarding
plaintiff's driving habits. Plaintiff has challenged
only evidence of the tachometer in his car as
violative of this order. Further, he has not specifi-
cally addressed any other modification. Accord-
ingly, we will limit our review to admission of
evidence of the tachometer.

At the time of the pretrial order, evidence of the
tachometer was specifically excluded as tending to
show that plaintiff was a "hot rod". At trial,
evidence of other modifications were admitted
without objection and, in large part, by plaintiff
himself, including wide tires at the front and back,
a lower rear-end ratio, new air shocks, a small
steering wheel, headers, a four-barrel carburetor
and a street cam. Defendant then sought to intro-
duce evidence that a tachometer had been added
to the vehicle. Defendant argued that the tachome-
ter permitted the driver to more safely shift gears
manually at higher engine speeds. Defendant tied
this evidence in with testimony that plaintiff's car
was heard to downshift moments before the acci-
dent. Defendant did not claim that plaintiff used

the tachometer in deciding to downshift manually but proposed the possibility. The court recognized that the issue was a close one but was persuaded that defendant had put forth a legitimate purpose for admission of the evidence. Plaintiff was able to show that tachometers are also an aid to economical driving and large numbers of newer cars are equipped with them.

We agree with the trial court that the issue presented a close call. We further are of the opinion that plaintiff was not unduly prejudiced by admission of the evidence that the tachometer was added and of how it could aid downshifting.

## VI

Plaintiff argues that the court erred in refusing to allow him to prove that the calcium chloride spraying apparatus was defectively designed and constructed. Plaintiff points to the exclusion of certain evidence in support of his argument. When this issue was raised in plaintiff's motion for new trial, the court disposed of it by noting that liberal cross-examination of defendant's chief mechanic had been allowed and the exclusion of any evidence was within the court's sound discretion. We find no error.

Plaintiff first challenges the exclusion of a videotape and testimony by Mr. Miller, an employee of defendant who drove the spray truck in 1983. Defendant objected to the evidence largely on the basis that the manner in which Mr. Miller operated the truck in 1983 had little to do with the manner in which Mr. Knezevich operated the truck in 1976. Plaintiff asserted that the vidotape would assist the jury in understanding the spraying apparatus and operation, that Miller would contradict Knezevich's claims that the apparatus

did not dribble and the operation did not involve blocking Lewis Avenue, and finally that Miller would routinely close a valve that Mr. Knezevich admittedly did not close.

We find no error in the court's exclusion of the above evidence. The videotape was unnecessary because plaintiff could accomplish his purpose through photographs and testimony. Miller's testimony was not necessary because Knezevich did not testify as plaintiff had anticipated and Miller could not say that his different procedure (shutting off the valve) affected safety.

Plaintiff also challenges the exclusion of testimony by defendant's mechanic regarding changes that could be made to the spraying apparatus which would have relieved the problem of dribbling and would have allowed the driver to know from the cab of the truck whether the spraying apparatus was on or off. The excluded testimony would have shown neither that calcium chloride dribbled on the road created a hazardous condition nor that the apparatus as it existed in 1976 was unsafe. Defendant did not deny that the spraying apparatus could be built differently; feasibility of changes was not an issue. We are convinced that the exclusion of this testimony played no part in the jury's verdict in favor of defendant.

## VII

Plaintiff finally argues that the trial court erred in refusing to instruct the jury either that defendant had insurance or that a judgment against defendant would not affect the jurors' taxes. Generally, evidence of liability insurance is inadmissible, MRE 411, but plaintiff argues that, because all the jurors were taxpayers and plaintiff was requesting an $8 million verdict against a govern-

mental body, the requested instruction was necessary to ensure the jury's impartiality.

In denying plaintiff's motion for a new trial, the court noted that the parties had never raised any question at trial concerning insurance or the effect of a verdict on taxes and concluded that plaintiff's argument was purely speculative. We agree with the trial court and find no error.

Affirmed.

E. A. Quinnell, J., concurred.

Shepherd, J. (concurring). I believe that in the factual context of this case there was no error by the trial court in refusing to admit into evidence the fact of the spreading of sand on the road after the accident. The point of departure for my analysis is that the existence of the calcium chloride on the road and the fact that the road would therefore be more slippery than without the calcium chloride were conceded by the defendant. Therefore, the evidence of the existence of the sand would not have substantially contributed to the proof of either of those facts.

The only remaining significant issues related to the quantity of calcium chloride that was on the road were (1) precisely how slippery the road was at the time of the accident and (2) whether the road presented an unreasonable hazard. Since the sand was spread uniformly, there is no indication that the existence of the sand would shed any light on the quantity of calcium chloride that had been deposited. For the same reason, the sand would not show how slippery the road was at the time of the accident. Similarly, the sand does not tell us if the road presented an unreasonable hazard. A further problem is that if the sand did prove that the road was hazardous, it would also

establish the defendant's negligence because the avoidance of an unreasonable hazard is precisely the duty that the law imposes on defendant. To admit this evidence would therefore directly contravene the policy of MRE 407.

For the above reasons the sand either proves nothing or it proves too much. In the peculiar circumstances of this case there is no middle ground.