1997 SD 92

**Arpie BLAND and Kenneth Bland, Plaintiffs and Appellants,**

v.

**DAVISON COUNTY, Defendant and Appellee.**

**No. 19538.**

Supreme Court of South Dakota.

Argued Jan. 14, 1997.

Reassigned May 13, 1997.

Decided July 16, 1997.

William F. Day, Jr. of Lynn, Jackson, Shultz and Lebrun and N. Dean Nasser, Jr. of Nassre Law Offices, Sioux Falls, for Plaintiffs and Appellants.

Douglas M. Deibert of Cadwell, Sanford, Deibert & Garry Sioux Falls, for Defendant and Appellee.

GILBERTSON, Justice (on reassignment).

[¶ 1.] In *Bland v. Davison County*, 507 N.W.2d 80 (S.D.1993) we rejected the contention that Davison County, in the maintenance of icy roads, had absolute discretion and held rather that it was charged with the duty of "reasonable and ordinary care." Upon retrial, the jury found that the County fulfilled this obligation and decided in favor of the County. Arpie Bland appeals this adverse jury verdict in her personal injury lawsuit against the County. She claims 1) that the trial court erred when it refused to grant a change of venue in light of pretrial publicity and the jurors' status as taxpayers and 2) that the court should have granted a new trial because of juror misconduct. She also argues that the court abused its discretion 3) by refusing to allow impeachment in accordance with the exception to the subsequent remedial measure rule; 4) by denying her motions for directed verdict and judgment

notwithstanding the verdict on the issue of County's negligence; 5) by failing to allow expert testimony regarding reasonable road maintenance standards; and 6) by instructing the jury on the defense of assumption of the risk. Finding no error, we affirm on all issues.

## FACTS

[¶ 2.] On January 6, 1990, Arpie Bland (Bland) was traveling east from her rural Davison County home to Mitchell along County Highway 23, also known as the Loomis Oil Road. Just west of where that road intersects with County Highway 8 (Betts Road) a thick shelterbelt of trees lined approximately 500 feet (about one-tenth of a mile) of the south side of Loomis Road, creating a shady condition where snow and ice accumulated on the road. Bland reduced her speed from the posted 55 m.p.h. speed limit to 40 m.p.h. as was her habit when preparing to cross this patch of ice. As she crossed the ice, her car began to fishtail and spin and she was unable to regain control. The car continued out of control on the dry pavement at the end of the shelterbelt and into the northeast corner of the Betts Road intersection. It rolled 2½ times. Bland suffered severe personal injuries and is now paraplegic.

[¶ 3.] At trial, the County stated that its policy was to sand only portions of highways containing stop signs, curves, hills, and bridges. Because of this policy, even though it admitted to the jury it was aware of the icy condition of the shelterbelted area, no sanding was done prior to the accident.

[¶ 4.] **1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED BLAND'S MOTION FOR A CHANGE OF VENUE**

[¶ 5.] Bland argues that a change of venue should have been granted due to pretrial publicity regarding the lawsuit and because of the jurors' status as taxpayers. Our standard of review of the trial court's ruling on a change of venue motion is whether there was an abuse of discretion. *State v. Petersen*, 515 N.W.2d 687, 688 (S.D.1994); *State v. Arguello*, 502 N.W.2d 548, 551 (S.D.1993); *State v. Wellner*, 318 N.W.2d 324, 331 (S.D.

1982). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and against, reason and evidence." *Ward v. Lange,* 1996 SD 113, ¶ 23, 553 N.W.2d 246, 252 (citations omitted).

[¶ 6.] A change of venue may be granted by a court when, among other reasons, "there is reason to believe that an impartial trial cannot be had therein[.]" SDCL 15–5–11(2). Bland concedes that pretrial publicity, standing alone, is insufficient to warrant a change of venue. *See, e.g., Petersen,* 515 N.W.2d at 688 ("If the jurors were unaware of the pretrial publicity or could not recall it, or if knowledge of the publicity did not cause a prejudicial opinion to be formed, a change of venue is unwarranted."); *State v. Smith,* 477 N.W.2d 27, 32 (S.D.1991) ("There must be additional evidence tending to show that such publicity was so prejudicial as to prevent ... a fair and impartial trial in the county."). Bland argues that the news stories which appeared in the Mitchell newspaper concerning the lawsuit instilled an "Us versus Them" attitude with the county residents, taxpayers, and therefore, the members of the jury. One article quoted the executive director of the South Dakota Association of County Commissioners as stating, "[The Blands] are not just suing the county. The county is the taxpayers of the county." The effect, Bland claims, was to "bolster the already inherent association and identification between the jury members and the Defendant."

[¶ 7.] Bland relies heavily on *Olson v. City of Sioux Falls,* 63 S.D. 563, 262 N.W. 85 (1935), where this Court affirmed an order for a change of venue granted for a second trial after the first trial ended in a hung jury. Olson sued the City of Sioux Falls for damage caused to his land by the City's pollution of the Big Sioux River. This court held that the trial court did not abuse its discretion in granting the change of venue:

> It is one thing to hold that a juror may not be challenged for cause on account of a very small interest which he may have as a taxpayer, but quite another thing to con-

clude that an entire jury of taxpayers, each of whom is interested to a small degree adversely to the defendant, gives that assurance of a fair trial to which every litigant is entitled.

> A jury is drawn from the body of the county, and, conceding that where the persons adversely interested in the result of an action are confined to a locality, and the number is small in comparison with the population of the county, no right to a change of place of trial would exist, we are convinced that the trial court was justified in concluding that the number of jurors from the city of Sioux Falls on a panel would be so proportionately large that an impartial jury could not be selected and that the trial court did not abuse its discretion.

*Id.* at 568, 262 N.W. at 88 (citation omitted). We need not reach the question as to whether this case sufficiently supports Bland's argument as she did not follow up on her concerns during voir dire, and failed to demonstrate any prejudice.

[¶ 8.] At a pretrial conference preceding the first trial date in February of 1995, the trial court responded to Bland's concerns regarding pretrial publicity by ordering the attorneys not to speak to the press and directing that the matter of press coverage would be handled on voir dire. The trial was originally scheduled for February, 1995, but was eventually held November 6–9, 1995.[1] The first motion for a change of venue was made in February. Bland renewed the motion at the November pretrial motions hearing.

[¶ 9.] The court again instructed that voir dire would proceed and suggested counsel could renew the motion at the close of jury selection. The court informed the attorneys of its preference that counsel begin by addressing the entire panel and then address individual jurors according to any responses to those questions. Bland did not object to this, and questioned only one juror individually concerning preconceived notions about

---

1. The newspaper articles concerning the lawsuit appeared on January 23, 1995; February 4, 1995; February 18, 1995; November 4, 1995; November 7, 1995; November 8, 1995; and November 9, 1995.

the case. That juror was removed for cause.[2] Following that juror's removal, the topic of the questioning changed and no further inquiry was made into the subject. The motion for change of venue was renewed and again denied following voir dire.

[¶ 10.] "Voir dire examination is the better forum for ascertaining [public hostility]." *Arguello*, 502 N.W.2d at 552 n.1 (citation omitted). Bland could have asked to submit written questions to the panel for the purpose of determining which jurors may have heard out-of-court statements and the details of such news or statements, and could have asked to isolate and conduct individual voir dire of those jurors who had knowledge of the case. *See Smith*, 477 N.W.2d at 32; *Boykin v. Leapley*, 471 N.W.2d 165, 168 (S.D. 1991). Although the court was not obligated to allow individual questioning, *State v. Tapio*, 459 N.W.2d 406, 412 (S.D.1990), such a request was not made. Based upon voir dire, the trial court concluded "[T]his is a jury of 12 impartial people who are not going to be improperly influenced in the case; the court believes that under our system a fair jury has been selected for both sides in this case."

> The court, sitting through voir dire, found that the publicity, although it was unfortunate, did not so invade the jurors' minds or cause them to form opinions or beliefs which would affect their judgment in this particular case. The United States Supreme Court in *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), found that whether or not the veniremen were acquainted with the case was "essentially irrelevant. The relevant question is not whether the community remembered the case, but whether the jurors at [the] trial had such fixed opinions that they

could not judge impartially the guilt of the defendant[.]" 467 U.S. at 1035, 104 S.Ct. at 2891, 81 L.Ed.2d at 856.... Under *Patton*, the trial court's findings of juror impartiality may be overturned only for manifest error.

*State v. Banks*, 387 N.W.2d 19, 21 (S.D.1986) (alterations in original).

[¶ 11.] At the time Bland renewed the motion for change of venue, her counsel stated, "We are unable to, of course, establish a lot of prejudice from [the pretrial publicity]." However, it is Bland's burden to show that "knowledge of the publicity [caused] a prejudicial opinion to be formed[.]" *Petersen*, 515 N.W.2d at 688. Bland has not produced evidence to provide a sufficient basis for a change of venue, *State v. Martin*, 449 N.W.2d 29, 34 (S.D.1989), and has not shown abuse of discretion or "manifest error" in the trial court's denial of the motion.[3]

## [¶ 12.] 2. WHETHER BLAND IS ENTITLED TO RELIEF FROM THE VERDICT FOR JUROR MISCONDUCT

■ [¶ 13.] A party seeking a new trial on the grounds of juror misconduct must demonstrate that the misconduct materially affected his or her substantial rights. *Shamburger v. Behrens*, 418 N.W.2d 299, 302 (S.D. 1988) (citing *Carpenter v. Union Baking Co.*, 67 S.D. 151, 290 N.W. 322 (1940)).

> When reviewing a trial court's factual determination regarding juror misconduct, the standard to be invoked is the clearly erroneous standard. A finding is "clearly erroneous" when after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake was made. We will uphold the trial court's resolution

**2.** *Other jurors raised their hands when asked if they read about the case, but none were singled out for individual questioning.*

**3.** *In support of her argument that a fair trial was impossible when the jurors were all taxpayers of the defendant County, Bland cites Slaubaugh v. Slaubaugh, 499 N.W.2d 99 (N.D.1993), where the North Dakota Supreme Court upheld an order changing venue and stated that "[W]ise discretion might require a transfer of a case where it appears that every prospective juror will have a small interest as a taxpayer adverse to the*

*moving party." Id. at 106. However, this was not the sole or even the primary reason for granting the change of venue; 30 of 50 potential jurors were excused for cause during voir dire, over half had prior knowledge of the case, many knew or were related to witnesses, parties, and attorneys. One of the defendants' attorneys, also slated to be a witness, was known by many of the jurors. "These factors, when viewed as a whole, provide a rational and reasonable basis to change venue." Id. at 107 (emphasis added).*

of the facts unless, upon our viewing of the evidence in a light most favorable to the trial court's finding, we are convinced the finding was clearly erroneous under this definition.... The lower court's legal decision as applied to the facts is reviewed under the abuse of discretion standard. *State v. Wilkins*, 536 N.W.2d 97, 99 (S.D. 1995) (citations and internal quotations omitted).

■ [¶ 14.] Bland contacted several jurors by letter following the trial and subpoenaed some of them for the post-trial motions hearing. When a party attempts to impeach a verdict upon the basis of juror misconduct and relies on testimony from a juror, that party must show evidence of extrinsic interference with the deliberations of the jury:

Except as otherwise provided by statute, upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

SDCL 19–14–7 (FedREvid 606(b)); *see also Shamburger*:

SDCL 19–14–7 seeks to reach an accommodation between policies designed to safeguard the institution of trial by jury and policies designed to insure a just result in individual cases. The rule was drafted as a rule of incompetency barring a juror from testifying as to motives, methods, or mental processes by which he reached his verdict. This rule operates to prohibit testimony concerning certain conduct by the jurors which has no verifiable outward manifestations.

It is settled law in South Dakota that only extrinsic, as opposed to intrinsic, information may be used to impeach a jury verdict.

A common ground for a motion for a new trial is that the jury, or members of it, has not performed in the fashion expected of juries. Attacks on this ground are frequently abortive because, as will be seen, the circumstances under which the jurors themselves may testify to impeach the verdict are very limited.

418 N.W.2d at 303–04 (citations omitted).

■ [¶ 15.] Bland argues that it was impossible for the jury members to " 'forget' their relationship with the county." One juror testified that another juror either made a statement or posed a question to the effect of "Where are *we* going to get $1.5 million ...." (emphasis supplied by Bland). This statement cannot properly be used to impeach the verdict, as Bland has not shown that it constitutes "knowledge relevant to the facts in issue not obtained through the introduction of evidence but acquired [elsewhere]." *Id.* at 303 (citation omitted). The jury knew the amount of damages sought by Bland because of statements made during the proceedings.[4] As already discussed, any prejudice or bias on the part of a juror should have been discovered and explored during voir dire. While it would be improper for the jury to consider the source of payment, the trial court expressly instructed the jury not to let its decision be affected by such concerns. Juries are presumed to follow instructions of the trial court. *State v. Means*, 363 N.W.2d 565, 569 (S.D.1985) (citing *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1963)). Furthermore, the juror who testified to hearing the statement characterized it as a "mutter," and a third juror testified she did not even hear the statement.

[¶ 16.] Bland also complains that there is evidence that during deliberations the jury

4. *When defense counsel addressed the jury during voir dire, he stated: "I suspect, ladies and gentlemen, that these gentlemen are going to ask this jury to award something in excess of a million dollars on behalf of their client."*

discussed the fact that the case was previously "thrown out." She argues the jury could only learn this from pretrial publicity. Again, this is an area which should have been explored in voir dire. Although several jurors indicated they read or saw articles concerning the case, none were questioned about what they read or what effect it might have on their ability to serve on the jury. Apparently Bland chose, as a matter of trial strategy, not to delve deeply into the pretrial news articles for fear of tainting the jury; however, the trial court did not preclude her from conducting individual voir dire to determine media exposure. *See Tapio,* 459 N.W.2d at 412 (observing that where a party is afforded the opportunity to individually question jurors, even with other jurors present, the party is provided with "some basis for reasonably knowledgeable exercise of his right to challenge") (quoting *Banks,* 387 N.W.2d at 22). In any event, the subject appears to have arisen only after the jury already reached a verdict, and Bland has not shown that "the alleged misconduct materially affected [her] substantial rights." *Shamburger,* 418 N.W.2d at 302.

[¶ 17.] Finally, Bland complains that the jury discussed the appropriate speed to drive over the Loomis Road stretch of ice, indicating a familiarity with the accident scene. The voir dire transcript indicates that Bland's counsel asked if anyone was familiar with the site of the accident, and later asked general questions about traveling on ice; however, the jury was never expressly asked if anyone ever drove over that particular patch of ice. The trial court did not preclude such questions and voir dire was the proper forum to glean such information. *Cf. Slaubaugh v. Slaubaugh,* 499 N.W.2d 99, 105 (N.D.1993) ("The failure to challenge prospective jurors for cause during voir dire waives any objections to their selection as jurors.").

> Even if juror misconduct occurs and warrants an inquiry, not every irregular conduct of a jury is prejudicial and warrants a new trial. When juror misconduct occurs, a rebuttable presumption of prejudice arises. The state may rebut this presumption:

> > By showing the information was harmless in view of all the evidence of guilt; or by determining there was no significant possibility that the defendant was prejudiced; or by showing that the nature of the extra-record evidence could not have had or had a minimal effect upon the jury.

*Wilkins,* 536 N.W.2d at 99–100 (citations omitted). The trial court was not clearly erroneous in finding that this discussion neither prejudiced Bland nor affected the outcome of the trial. Therefore, it was not an abuse of discretion to deny the motion for a new trial based upon the alleged juror misconduct.

[¶ 18.] **3. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO ALLOW IMPEACHMENT OF A WITNESS IN ACCORDANCE WITH THE EXCEPTION TO THE SUBSEQUENT REMEDIAL MEASURE RULE**

[¶ 19.] The trial court declined to allow into evidence the facts that County Assistant Highway Superintendent Joseph Donald King was summoned to the accident scene, stayed for approximately one hour with hazard lights flashing to warn oncoming traffic, and did not leave until a sanding truck had arrived. This evidentiary ruling is examined by this Court under an abuse of discretion standard of review.

> An abuse of discretion has been defined by this Court as a decision which is not justified by, and clearly against reason and evidence. We will not reverse a decision if "we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion."

*Dakota Cheese, Inc. v. Taylor,* 525 N.W.2d 713, 715 (S.D.1995) (citations omitted). " Upon review ... we must be careful not to substitute our reasoning for that of the trial court." *State v. Larson,* 512 N.W.2d 732, 736 (S.D.1994).

[¶ 20.] The only reason that King came to the accident scene to begin with was because he was requested to do so by law enforcement. Without this call, he would not have gone, and no remedial sanding would have

been done. Beyond that, the only reason that sanding was done after King's arrival was because it was ordered by law enforcement and not at King's direction.[5]

[¶ 21.] Bland argues that these facts should have been admitted into evidence under the impeachment exception to the general rule of exclusion of remedial measures. *See* SDCL 19–12–9. Thus, we must ask, impeachment of what? King testified at trial that, in his opinion, the road was not as dangerous as claimed by Bland. How is that subjective opinion impeached by the fact he was summoned by law enforcement to the accident scene and was ordered by law enforcement to gravel the accident site?[6] The Court in *Palmiter v. Monroe County Bd. of Comm's*, 149 Mich.App. 678, 387 N.W.2d 388 (1986), in facts strikingly similar to this case, held that sanding subsequent to an accident was not admissible evidence for purposes of impeachment.[7]

[¶ 22.] Even if Bland can clear this evidentiary hurdle, she does not adequately explain how this "error" was prejudicial. She does argue that the jury was allowed to hear King's uncontroverted testimony which downplayed the conditions of the road on the day of the accident. On the other hand, numerous other witnesses, many called by Bland, were allowed to give their opinion as to the road conditions in question. Arpie Bland testified as to the accident scene, as well as did neighbors Susan Dodd and Lonnie Bollock, who daily used the road and went over the accident site. Bland, Dodd and Bollock testified they would reduce speed when approaching this icy patch. Dodd and Bollock both considered this icy condition to be "dangerous." State Trooper Henry Bayne testified that he routinely traveled this icy stretch of road and took precautionary measures when driving across the ice. He also testified he considered this condition to be "a hazardous ice accumulation." Deputy Sheriff Kelly Gross testified to the same. Gross also testified that immediately after the accident, when he attempted to move his cruiser at the scene, the car moved to the side rather than forward. Trooper Bayne testified at trial that when he arrived at the accident scene, he slipped and fell on the ice as he was getting out of his patrol car.

[¶ 23.] The evidence of sanding at best only constitutes indirect evidence of a hazardous condition. *See Palmiter*, 387 N.W.2d at 395. The only connecting link is King's subjective belief regarding the condition of the road. *See Id.* King could believe the road was dangerously slippery when in fact it was not, or, vice versa, he could believe the road was not dangerously slippery when in fact it was. *See Id.* Had the sanding evidence been admitted, then King's explanation as to why it

---

5. *As noted in Bland I,* 507 N.W.2d at 81, SDCL 31–12–19 requires the board of county commissioners to properly and adequately maintain the county highway system. SDCL 34–5–4 vests with the board of county commissioners and the county highway superintendent the sole judgment as to the necessity of snow removal and full discretion with decisions relative thereto. As such, King was under no legal obligation to answer the summons of law enforcement to the accident scene or the subsequent "order" to gravel it.

6. *This was the basis for the trial court's ruling. It held:*

> Just because somebody made a decision to sand the road does not prove that it needed to be or should have been sanded.... And this court doesn't believe that because [King] did for some reason or another have some sanding done that that is proper impeachment of his opinion or shows that he was lying or incorrect or made a misstatement in saying it didn't need to be sanded prior to the accident.

7. *As far as impeachment of King's individual testimony, it should also be noted he never testified the road was safe on the day in question. His testimony which Bland now points to as the basis for the admission of "impeachment" testimony, is as follows:*

> Q: There was a very slippery and dangerous patch of ice there, correct?
> A: Well, I would say there was a patch of ice there; yes, sir. I wouldn't say whether it was dangerous or if anybody was driving under control had driven that road it wouldn't be that bad.
>
> . . .
>
> Q: ... Would you agree with me that something was wrong, very wrong with that ice?
>
> . . .
>
> A: Not necessarily.
>
> . . .
>
> A: I wouldn't say very wrong. In the state of ——in the state of South Dakota or anywhere in the Northwest.

was done, solely on orders of a third party, was also appropriate. *See Id.*

[¶ 24.] Thus, the jury was provided with an abundance of direct testimony as to the conditions of the icy patch, and it cannot be shown that "impeaching" King by having him testify he was summoned to the accident scene by law enforcement and "ordered" to gravel it would have produced a different outcome in the trial.[8]

[¶ 25.] **4. WHETHER THE TRIAL COURT SHOULD HAVE GRANTED BLAND'S MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT ON THE ISSUE OF COUNTY'S NEGLIGENCE**

■ [¶ 26.] Bland argues that her motions for a directed verdict and judgment notwithstanding the verdict should have been granted because the evidence in her favor was "clear and full, credible and not contradicted and so plain and complete that reasonable minds could come to no other conclusion."

A motion for a directed verdict under SDCL 15-6-50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse.

A motion for judgment n.o.v. is based on and relates back to a directed verdict motion made at the close of all the evidence.

SDCL 15-6-50(b). Thus, the grounds asserted in support of the directed verdict motion are brought before the trial court for a second review. We review the testimony and evidence in a light most favorable to the verdict or the nonmoving party, "then without weighing the evidence [we] must decide if there is evidence which would have supported or did support a verdict. . . ."

*Sabag v. Continental,* 374 N.W.2d 349, 355 (S.D.1985). We review the trial court's ruling on a directed verdict or judgment notwithstanding the verdict by the abuse of discretion standard. *Treib v. Kern,* 513 N.W.2d 908, 914 (S.D.1994).

■ [¶ 27.] Bland relies upon *Bland I,* where we stated that "We cannot infer from the statutes that County has permission to idly stand by while hazards knowingly exist on its roads." 507 N.W.2d at 81. Bland is correct that County admits to a duty to maintain its roads and concedes knowledge of the icy patch on Loomis Road. However, whether it was reasonable to leave it unsanded was a question for the jury. In *Bland I,* we also stated that County was not obligated to remove all snow and ice on its roads, and that the question was for the jury whether County provided ordinary and reasonable maintenance. *Id.* at 81–82. We think reasonable minds could differ as to whether the County's maintenance was ordinary and reasonable, and further, that the evidence presented at trial, viewed in a light most favorable to the verdict or the nonmoving party, could reasonably support the verdict. The County reported no previous complaints, and the jury could reasonably conclude that Bland committed driver error. "Questions of negligence, contributory negligence and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues." *Bauman v. Auch,* 539 N.W.2d 320, 325–26 (S.D.1995)

---

8. *Bland admits as much in her trial brief to this Court when she candidly states that to establish prejudice, the effect of the trial court's evidentiary ruling must be tied directly to an affirmative finding of jury misconduct and bias [issues one and two], arguments we have rejected.*

The effect of the judge's ruling was to allow the county jury to hear from their Assistant High-

way Superintendent that the road wasn't so dangerous so it must have been the Plaintiff's fault. Given the conflict of interest of the jury, the Court's rulings improperly gave the jury a playground upon which their bias could play and certainly confused them on assumption of the risk. (Plaintiff brief p. 24 n1)

(citing *Westover v. East River Elec. Power*, 488 N.W.2d 892, 896 (S.D.1992); *Gerlach v. Ethan Coop Lumber Ass'n*, 478 N.W.2d 828, 830 (S.D.1991)).[9] Therefore, it was not error for the trial court to deny said motions.

**[¶ 28.] 5. WHETHER BLAND'S EXPERT SHOULD HAVE BEEN ALLOWED TO TESTIFY TO STANDARDS OF ROAD MAINTENANCE BY COUNTIES AND OTHER GOVERNMENTAL ENTITIES**

 [¶ 29.] Bland's offer of proof limits the scope of her argument to this Court on appeal. Her offer of proof was as follows:

Similarly, we have an offer of proof. Our offer is that our expert, one of the foremost experts in the country on this subject of snow and ice control, would verify that the recognized standard of care in this industry would require this sanding to have been done at this icy hazard. I believe he testified that way [by deposition]. But, that since it's an icy hazard, it's isolated and the road surface is different on both sides of it, and the hazard, which is part of what makes it a hazard, that he— that the generally accepted standard of care is for safety and that they have to take action, they cannot [stand by] and allow the hazard to knowingly be on the road. So, his opinion is very similar to law, in that he would explain that that is the practice which is followed in virtually every jurisdiction. End of offer.[10]

As with the previous issue, we must determine only whether a judicial mind could reasonably have reached this conclusion or whether the trial court abused its discretion. *Application of Widdison*, 539 N.W.2d 671, 676 (S.D.1995).

[¶ 30.] The use of expert testimony is governed by SDCL 19-15-2. In essence, its sole justification is to assist the jury. As we held in *Schaffer v. Edward D. Jones*, 1996 SD 94, ¶ 8, 552 N.W.2d 801, 805:

[T]he determining factor in admitting expert testimony is if it would assist the jury in understanding matters that normally would not lie within a layman's breadth of knowledge. When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time.

Thus, the question becomes whether a juror would know from his or her own experiences whether sand is needed on ice. The trial court held that expert testimony was not necessary to assist the jury on the question of the necessity of sanding. Bland's offer of proof goes into no specifics which an expert might possess as to what types of icy conditions benefit from sanding, what types of sand should be used, whether to mix in salt, the amount of sand required per the size of the ice on the highway or any other technical data. It simply goes to whether sanding should have been done on the ice at the accident site.

[¶ 31.] As this Court observed in *Homan v. Chicago & Northwestern Transp. Co.*, 314 N.W.2d 861, 862 (S.D.1982):

The presence of snow on a township road in late December is not an altogether unexpected event. Although, the presence of snow on a highway may indeed present a hazard to motorists, to hold that unre-

**9.** *County's reliance on the doctrine of sovereign immunity as grounds for sustaining the verdict is misplaced. If that defense were available to County, it would have barred Bland's action entirely. See Wilson v. Hogan*, 473 N.W.2d 492, 494 (S.D.1991) ("In general, the doctrine of sovereign immunity ... means that the governing acts of the state, its agencies and other public entities cannot be attacked in court without the state's consent."). County waived this defense by purchasing liability insurance and is deemed "to have consented to suit in the same manner that any other party may be sued." SDCL 21-32A-1.

**10.** County claims that Bland waived the issue by failing to make an adequate offer of proof; however, a review of the transcript proves otherwise. Immediately following County's offer of proof regarding what its expert would testify to if allowed, Bland made the above cited offer of proof. When County stated the offer was not timely made, the trial court disagreed, noting that Bland had not yet rested her case. County cited no authority then or now to demonstrate the offer of proof was untimely. "Failure to cite authority violates SDCL 15-26A-60(6) and constitutes a waiver of that issue." *State v. Satter*, 1996 SD 9, ¶ 20, 543 N.W.2d 249, 253. Bland made an offer of proof on the excluded testimony, thereby preserving the issue for our review. *See generally City of Sioux Falls v. Kelley*, 513 N.W.2d 97 (S.D.1994).

moved [ice] causes a [county] highway to become out of repair would constitute a remarkable extension of duty imposed by SDCL 31–32–10[.]

As limited by Bland's offer of proof, we disagree with Bland's argument that road maintenance is not within a layman's breadth of knowledge. Anyone who has owned and maintained a sidewalk, driveway or even driven a car in South Dakota during the winter would be able to form their own conclusion as to whether a reasonable standard of care requires that an icy road be sanded.

[¶ 32.] Further, it is highly doubtful that some sort of purported "national standard" is legally relevant to South Dakota. The people of this State through our Constitution delegated supervision of the roads to the Legislature. SDConst Art. XIII, § 9. The Legislature has seen fit through appropriate legislation to assign the responsibility for supervision of county highways to the county commissions. See SDCL 31–12–19; SDCL 34–5–4. In accordance with Bland I, whether it is reasonable that South Dakota highways will have every square inch salted, none of it salted or somewhere in between is a question to be determined by the Legislature and proper delegation to local governmental units, not some theoretical "national standard".

[¶ 33.] Considerations as to whether to sand or not to sand, and if so, how much, depends on the locale, weather conditions, traffic patterns and other criteria. What may be a snowstorm which immobilizes Dallas, may be only a minor inconvenience in Mitchell. See Estate of Arrowwood v. State, 894 P.2d 642, 650 (Alaska 1995) (in reviewing whether State erred in not closing an icy road, the court stated: "An evaluation of the reasonableness of the State's efforts must include consideration of numerous ... factors, such as the resources which are available, the physical area which must be maintained, and the actual procedures used to allocate those resources.") In addition, Bland's offer of proof contains a statement that "his [expert] opinion is very similar to law, in that he would explain that that is the practice which is followed in virtually every jurisdiction." It is doubtful that there is a practice followed in virtually every jurisdiction, since there is no uniformity among the states in recognizing governmental liability for ice and snow. See James O. Pearson Annotation, Liability, in Motor Vehicle–Related Cases, of Governmental Entity for Injury or Death Resulting from Ice or Snow on Surface of Highway or Street, 97 A.L.R.3d 11 (1980 & Supp.1996) (listing cases).

[¶ 34.] In accordance with our decision in Bland I, the trial court properly instructed the jury on the county's appropriate standard of care. More specifically, based on the abundance of eyewitness testimony as to the conditions at the accident site, the properly instructed jury with its own knowledge of everyday South Dakota winter life, could make the same determination as to the accident site at the time of the accident.

[¶ 35.] Recently in Kuper v. Lincoln–Union Elec., 1996 SD 145, ¶ 40, 557 N.W.2d 748, 760 we recognized that when addressing the question of the admissibility of so-called expert testimony, the trial court "still has the 'task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " (citing State v. Hofer, 512 N.W.2d 482, 484 (S.D.1994)) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469, 485 (1993)). Under our recent decisions when the trial court is ruling on the admissibility of purported expert opinion, the trial court "needs to exercise its gatekeeping function." Kuper, 1996 SD 145, ¶ 41, 557 N.W.2d at 760. We cited approvingly the concept of limited use of expert witnesses in Zens v. Harrison, 538 N.W.2d 794 (S.D.1995), agreeing with the requirement made by the trial court in that case: "[i]n the Court's view, the [expert] witness can help the jury decide whether or not the workplace was reasonably safe, because I wouldn't know if it would be or not without an expert guiding me." Id., 538 N.W.2d at 796. In the case now before us, the trial court applied the reverse of this rationale when it announced the basis for its ruling was, "I think [this] is not a type of an issue that requires expert testimony.... I

don't think that is something that's really for an expert to tell us."

**[¶ 36.]** The trial court held that the proposed expert testimony also went to the ultimate issue, and under our decision in *Zens,* the trial court exercised its sound discretion in reserving that determination for the jury. With the adoption of SDCL 19–15–4, there is no longer a per se exclusion of this type of testimony solely because it goes to the ultimate issue. The decision whether to admit or not admit offered "expert" testimony is now controlled by SDCL 19–15–2 as applied by the discretion of the trial court. *Id.,* 538 N.W.2d at 795.

**[¶ 37.]** This testimony was not limited to the standard of care and therefore the trial court did not err in holding the proposed evidence went to the ultimate issue of negligence. Here, it was uncontested that the County did not gravel the accident site prior to the accident. Thus, if this failure violated the standard of reasonable care, it also amounted to negligence by the County. Subsequent questions of Bland's contributory negligence or assumption of the risk do not affect this conclusion. In *Zens,* we held that it was not an abuse of discretion for the trial court to preclude expert testimony which went to the ultimate issue of negligence. *Id.* at 796.

**[¶ 38.]** As with issue three, even if Bland established an abuse of discretion, she tied her claim of prejudice concerning this issue to the numerous other assignments of error which this Court has already rejected.[11] Beyond that, the trial court's ruling applied evenhandedly to both sides. Prior to the

trial, it precluded both parties from calling experts to testify on this limited point.

**[¶ 39.]** Nevertheless, an examination of the trial record establishes that Bland's expert, Robert Blackburn, was allowed to testify that the road on the day in question constituted an "icy hazard." Blackburn was then allowed to testify, in his expert opinion, as to appropriate remedial measures, which included sanding.[12] Bland's claim of prejudice is reduced to arguing that her expert should have been allowed to testify the County "should" have graveled the accident site, rather than what he was allowed to testify to, that the County "could" have graveled the accident site.

**[¶ 40.]** We hold that the trial court did not abuse its discretion in refusing the above offer of proof and that no prejudice resulted to Bland therefrom.

**[¶ 41.] 6. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY INSTRUCTING THE JURY ON THE DEFENSE OF ASSUMPTION OF THE RISK**

**[¶ 42.]** The trial court, over Bland's objection, instructed the jury on the defense of assumption of the risk.

An appellant has the burden to show not only that the instruction given was in error, but also that it was prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if the appellant's instructions had been given.

*Sybesma v. Sybesma,* 534 N.W.2d 355, 359 (S.D.1995) (citations omitted). We must de-

---

**11.** *Bland's brief states:*

Plaintiffs were forced to try the conduct of the county to the county's own jury, not only without the trial court's guidance (that the county was negligent as a matter of law), but without the guidance presented by the Supreme Court (see Plaintiffs' Refused Proposed Jury Instructions ... ) and finally, as the coup de grace, the Plaintiffs were deprived of the right to present expert evidence on the well established standard of care which applies in this case. (Plaintiffs' brief p 32–33, italics original)

**12.** *Blackburn testified the remedial measures available to Davison County were:*

Well, the procedures Davison County have [sic], they have two procedures here that could have been applied to the roadway. One is to apply abrasives, or sand in this case, with deicer chemical. And the other case is that he could have bladed it off with a blade. Both of those cases could been handled quite easily. Other ways of handling the problem would be to sign the area for the hazardous location.... Other ways of handling this problem, of course, might be to totally remove the cause of the problem and that is to thin out any trees overhead, vegetation that might cause enough shadows, to prevent the formulation of ice over there.

termine whether the instruction was given in error.

[¶ 43.] The elements of assumption of the risk must be shown by the defendant:

1. that the plaintiff had actual or constructive knowledge of the existence of the specific risk involved;

2. that the plaintiff appreciated the risk's character; and

3. that the plaintiff voluntarily accepted the risk, having had the time, knowledge, and experience to make an intelligent choice.

*Bauman*, 539 N.W.2d at 326 (citing *Westover v. East River Elec. Power Coop., Inc.*, 488 N.W.2d 892, 900 (S.D.1992)). Failure to establish any one of the above three criteria would be fatal to this defense before the jury. *Id.* Bland argues that the evidence does not support the defense because the ice was of a different character that day than it was on any previous trip made by her, and therefore, she knew of the *general*, not the *specific*, risk involved in driving on Loomis Road that day. Without knowledge of the specific risk, she argues, the defense of assumption of the risk must fail. We disagree, as it was a question for the jury.

[¶ 44.] "Ordinarily, questions of negligence, contributory negligence and assumption of risk are for the jury, provided there is evidence to support them." *Mack v. Kranz Farms*, 1996 SD 63, ¶ 8, 548 N.W.2d 812, 814. The jury could reasonably conclude from the evidence that all three elements were met, and the instruction was properly given.

## CONCLUSION

[¶ 45.] Having fully and carefully considered all Bland's claims of error, we find that she received a fair trial and affirm the verdict of the jury.

[¶ 46.] MILLER, C.J., and AMUNDSON, J., concur.

[¶ 47.] SABERS and KONENKAMP, JJ., concur in part and dissent in part.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 48.] I concur except on Issues 3 and 5. I dissent on those issues because Bland was denied a fair trial as a result of the trial court's refusal to allow impeachment of County's employee, and its refusal to allow Bland's expert to testify as to reasonable standard of care. We should reverse and remand for new trial.

[¶ 49.] **3. THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO ALLOW IMPEACHMENT OF A WITNESS IN ACCORDANCE WITH THE EXCEPTION TO THE SUBSEQUENT REMEDIAL MEASURE RULE**

[¶ 50.] Shortly after the accident, law enforcement called the highway department and requested sanding of the stretch of ice on Loomis road. Bland was not allowed to introduce evidence of the post-accident sanding, or the actions of County's employee in warning traffic at the scene, because it was incorrectly excluded under the "subsequent remedial measure" rule:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This section does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, *or impeachment.*

SDCL 19–12–9 (FedREvid 407) (emphasis added).

[¶ 51.] Bland argues she should have been able to introduce the evidence under the impeachment exception to the rule. While County admits to a policy where this area was never sanded, even when its employees knew the ice was present, Bland attempted to show that the condition of the ice that day was different and more dangerous than normal. Assistant Department Superintendent King (King) testified by deposition that he stayed at the accident scene for approximate-

ly an hour with his hazard lights flashing, to warn "other oncoming traffic that something was wrong," and that he did not leave until a sand truck arrived. At trial, he testified that "there was nothing wrong" and that the road was not dangerous. The trial court ruled that King could be impeached, but only regarding his trial testimony that nothing was wrong. The trial court refused to allow the deposition testimony showing King waited an hour to warn other traffic, that his hazard lights were flashing, or that the area was sanded.

[¶ 52.] The trial court's evidentiary rulings are reviewed under the abuse of discretion standard. *State ex rel. Dep't of Transp. v. Spiry*, 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263 (citations omitted). Under this standard, "not only must error be demonstrated, but it must also be shown to be prejudicial error." *Id.* (quoting *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D.1976)). Prejudicial error is "that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it." *Id.* (quoting *K & E Land & Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 533 (S.D.1983)).

[¶ 53.] There is *no* basis to exclude evidence of subsequent remedial measures when offered to impeach testimony, as the rule expressly permits impeachment. *Traylor v. Husqvarna Motor*, 988 F.2d 729, 734 (7th Cir.1993).

> It is the general rule ... that evidence of precautions taken and repairs made after the happening of the accident is not admissible to show a negligent condition at the time of the accident [but] such evidence may be admitted to impeach the testimony of a witness who has testified that the condition prior to the accident was not a dangerous one.

*Love v. Wolf*, 249 Cal.App.2d 822, 58 Cal. Rptr. 42, 48 (1967); *cf. Kenny v. Southeastern Pennsylvania Transp. Auth.*, 581 F.2d 351, 356 (3rd Cir.1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979) ("[W]hen the defendant opens up the issue by claiming that all reasonable care was being exercised at the time, then the plaintiff may attack that contention by showing later repairs which are inconsistent with it.") (cit-

ing 2 J. Weinstein & N. Berger, *Weinstein's Evidence* ¶¶ 407[03], [04] (1977)).

[¶ 54.] The majority claims Bland was not prejudiced. The prejudice resulted from the fact that the jury was denied the evidence it needed to properly perform its duty. The majority attempts to set forth, *supra* at ¶ 22, testimony which supposedly refutes any claim made by King downplaying the condition of the road. That testimony simply reiterates the icy conditions, which are essentially undisputed. What Bland was not allowed to impeach was King's assertion the road was not dangerous, when in fact he stayed at the accident scene for an hour to warn traffic something was wrong. This went beyond merely ordering sanding, and refutes King's characterization of the road as merely icy. Evidence tending to establish negligence should not be kept from the jury. The majority wants to sterilize the court proceedings to permit only evidence favorable to the county. That is not our job on appeal. As noted, evidentiary rulings are reviewed under an abuse of discretion standard. However, whether to allow impeachment also involves construction of SDCL 19–12–9; mixed questions of fact and law requiring the application of a legal standard are reviewed de novo. *Abild v. Gateway 2000, Inc.*, 1996 SD 50, ¶ 6, 547 N.W.2d 556, 558–59 (citation omitted).

[¶ 55.] I agree with Bland that it was an abuse of discretion for the trial court to disallow this impeachment of King. Bland was prejudiced by the ruling because the jury was allowed to hear King's uncontroverted testimony that downplayed the condition of the road that day. We should reverse on this issue.

[¶ 56.] **5. BLAND'S EXPERT SHOULD HAVE BEEN ALLOWED TO TESTIFY TO STANDARDS OF ROAD MAINTENANCE BY COUNTIES AND OTHER GOVERNMENTAL ENTITIES**

[¶ 57.] Bland argues that the trial court erred when it excluded her expert's testimony regarding a reasonable standard of care in the maintenance of roads. As noted above, evidentiary rulings will not be dis-

turbed in the absence of the trial court's abuse of discretion. The trial court ruled, before trial, that experts would not be allowed to testify to what a county "should do" or to what is "reasonable" for a county to do in the way of road maintenance. The court's ruling limited expert testimony to what "could" be done.

[¶ 58.] County argues that it would not have made a difference if the experts testified on a reasonable standard of care because the jury would simply be presented with two different, subjective opinions. However, County's argument relates to credibility, not to admissibility. "It is a function of the jury to determine the credibility of the witnesses and to accept one witness' version of the facts and reject another's." *State v. Larson,* 512 N.W.2d 732, 737 (S.D.1994) (citations omitted). Without the excluded testimony, the only standard of care heard by the jury was County's policy or practice of not sanding visible stretches of ice.

[¶ 59.] The statute governing admissibility of expert testimony provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

SDCL 19–15–2 (FedREvid 702). The trial court has broad discretion concerning the admission of expert testimony and its decision on such matters will not be reversed absent a showing of an abuse of discretion. *State v. Hill,* 463 N.W.2d 674, 676 (S.D.1990).

> [T]he determining factor in admitting expert testimony is if it would assist the jury in understanding matters that normally would not lie within a layman's breadth of knowledge. When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time.

*Schaffer v. Edward D. Jones & Co.,* 1996 SD 94, ¶ 8, 552 N.W.2d 801, 805 (finding no abuse of discretion in the admission of expert's testimony when it was sufficiently helpful to the jury under the standard set forth in SDCL 19–15–2 in understanding the issues involved in that case) (citations omitted).

[¶ 60.] Apparently the trial court equated expert testimony concerning a reasonable standard of care with expert testimony concluding County was negligent. They are not the same, and the trial court's reliance on *Zens v. Harrison,* 538 N.W.2d 794 (S.D. 1995), was misplaced. In that case, we affirmed the trial court's exclusion of the portion of an expert's testimony where he opined the defendant was negligent in his instruction and supervision of the workplace. *Id.* at 795–96. A review of Bland's offer of proof, *supra* ¶ 29, demonstrates that "whether County was negligent" was *not* the testimony which Bland sought to elicit from her expert. Furthermore, we have recently stated that "an expert's testimony is not inadmissible merely because it may involve an ultimate issue for the jury." *State v. Barber,* 1996 SD 96, ¶ 37, 552 N.W.2d 817, 823 (relying upon SDCL 19–15–4 (Fed.R.Evid.704), which provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Obviously, it *is* an abuse of discretion to disallow expert testimony solely on the basis that it embraces an ultimate issue. *Id.*

[¶ 61.] We stated in *Bland v. Davison County,* 507 N.W.2d 80, 82 (S.D.1993) (*Bland I* ), that "evidence of an accumulation of snow or ice over a long period of time on a highway may present a hazard to motorists and *creates a jury question as to the ordinary and reasonable maintenance provided by County.*" (Emphasis added). Obviously, road maintenance is not within a "layman's breadth of knowledge," *Schaffer, supra,* and therefore, expert testimony regarding the subject would be sufficiently helpful to the jury and should be admitted. Without the support of expert testimony to establish a standard of care by which County's conduct could be judged, the jury was denied evidence necessary to properly decide the issue of negligence. In effect, the jury was denied the tools to do its job.

[¶ 62.] The majority argues incorrectly that our decision in *Zens* points to exclusion of the expert testimony; a simple review of that

case instructs to the contrary. In *Zens*, the plaintiff sought the expert's opinion on whether the defendant was "negligent"; here, Bland's expert would have testified to an ordinary standard of care concerning highway maintenance. The expert in *Zens was* allowed to testify whether the workplace was "reasonably safe"—what is the difference between that testimony and the testimony excluded here? The majority completely ignores *Barber*, 1996 SD 96 at ¶¶ 37–38, 552 N.W.2d at 823 *and* SDCL 19–15–4, which state the settled law, i.e., expert testimony is not inadmissible merely because it "involves" or "embraces" an ultimate issue for the jury. The majority also states the average person can reach their own conclusion regarding whether a reasonable standard of care requires that an icy road be sanded based upon their own experience of driving, or owning a driveway or sidewalk. The average person probably does have an opinion on any given subject; as noted in Justice Konenkamp's

special writing, this is not a reason to exclude expert testimony concerning a reasonable standard of care. *See infra* ¶ 64 (quoting John W. Larson, *South Dakota Evidence* § 702.1, at 475 (1991)). The deck was stacked on this issue in favor of County, and Bland deserves a new trial.[13] We should reverse on this issue.

KONENKAMP, Justice (concurring in part and dissenting in part).

[¶ 63.] I join the majority writing, with the exception of Issue 5 regarding the trial court's decision to disallow expert opinion on industry standards. This opinion testimony was pivotal; otherwise, the jury was left in the dark about highway maintenance routines in other states. It would have been very helpful for jurors to know what standards other jurisdictions practice in dealing with chronic ice patch hazards, such as the one in this case.[14]

---

**13.** The majority incorrectly characterizes Bland's argument on both Issues 3 and 5. *See supra* note 8 & ¶ 36. She did not argue that a successful result on appeal on either issue was contingent upon like success on Issues 1 and 2. She simply argued that juror bias and misconduct, factors she obviously believes were present, were compounded by the trial court's refusal to allow impeachment and refusal to allow testimony concerning the correct standard of care. Obviously, one erroneous evidentiary ruling can warrant reversal. *See, e.g., State v. Moeller*, 1996 SD 60, 548 N.W.2d 465.

**14.** Our Legislature conditionally abrogated sovereign immunity for counties, thus making them responsible in civil damages for negligence in certain circumstances. "The County has liability insurance, therefore, sovereign immunity is not applicable in this case since SDCL ch. 21–32A has eliminated sovereign immunity to the extent liability insurance coverage exists." *Bland v. Davison County* 507 N.W.2d 80, 82 (S.D. 1993)(*Bland I*)(Wuest, J., concurring specially). It becomes our duty, therefore, to delineate the rules under which liability may affix. *Bland I* never touched upon the public duty doctrine, which remains viable despite the absence of sovereign immunity. *See Tipton v. Town of Tabor*, 538 N.W.2d 783 (S.D.1995) and the cases preceding it. *Cf. Knudsen v. Hall*, 490 A.2d 976 (R.I.1985)(statute requiring roads to be kept in "good repair" created public duty to citizenry at large, not to specific individuals). Nevertheless, in many jurisdictions where sovereign immunity has similarly been waived, local governmental entities may be liable for negligence in failing to remedy hazards created by isolated patches of

ice or snow, especially when the problem was formed through unnatural accumulation and local authorities had adequate prior notice. *Draskowich v. City of Kansas City*, 242 Kan. 734, 750 P.2d 411 (1988)(unnatural source, a broken water main, caused ice to form on road); *Jones v. Commonwealth, Dep't of Highways*, 520 S.W.2d 749 (Ky.1974)(ice patch was the only ice on entire section of highway); *Hash v. State*, 247 Mont. 497, 807 P.2d 1363 (1991)(question of negligence properly for the jury when accumulation of "black ice" on curve in road caused fatal one-car accident; source of freezing water was plowed snow deposited at highest part of curve in road); *Corratti v. State*, 20 A.D.2d 166, 245 N.Y.S.2d 561 (1963)(blocked drainage pipe caused unremediated icy patch on eastbound lane existed over period of several winters); *Ventura v. City of Pittsburgh*, 159 Pa.Super. 279, 47 A.2d 668 (1946)(abnormal accumulation causing patch of ice over portion of road); *Wagner v. Village of Waterbury*, 109 Vt. 368, 196 A. 745 (1938)(city had prior notice of icy patch, but negligently failed to take any action to remedy it); *City of Richmond v. Best*, 180 Va. 429, 23 S.E.2d 224 (1942); *State v. Dieringer*, 708 P.2d 1 (Wyo.1985). *See* James O. Pearson, Jr., Annotation, *Liability, In Motor Vehicle–Related Cases, of Governmental Entity for Injury or Death Resulting From Ice or Snow on Surface of Highway or Street*, 97 A.L.R.3d 11 (1980 & 1996 Supp)(collecting cases).

In addition to the public duty issue, a troubling uncertainty in this case is whether the ice patch in question was "unnatural." Usually, this term is reserved for artificially created hazards involving a "human" factor, not ones inherent to win-

[¶ 64.] South Dakota's rule on expert testimony is a verbatim rendition of the federal rule:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

SDCL 19–15–2 (FedREvid 702). The federal rules liberalize expert opinion testimony, so doubts about the usefulness of such opinions should ordinarily be resolved in favor of admission. 4 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 702.04(1) (2ded 1997). The test for admissibility is not whether jurors would know from their own experience whether sanding was necessary. "Under Rule 702, a court is no longer required to exclude expert testimony merely because it relates to a subject matter within the comprehension of the average juror.... It is not always possible—and rarely profitable—to draw a bright line between issues within the comprehension of jurors and those that are not." *Id.* at § 702.03[2]. "[E]xpert testimony is admissible even where the issue is within the ordinary, unaided comprehension of the jury...." John W. Larson, *South Dakota Evidence* § 702.1, at 475 (1991). The test is simply whether expert testimony will help the jury.

Rule 702 abandons the common-law tradition that profoundly distrusted expert opinion testimony, both because it invaded the province of the jury and because a person could not be prosecuted for expressing an opinion. Under Rule 702, expert testimony is admissible when it will assist the trier of fact to understand the

evidence. In short, the test is no longer necessity, but helpfulness.

Weinstein & Berger, *Weinstein's Federal Evidence* § 702.02(1). *Accord Zens v. Harrison,* 538 N.W.2d 794, 795–96 (S.D.1995); *State v. Werner,* 482 N.W.2d 286, 291 (S.D. 1992); *see Koch v. Southern Pacific Co.,* 266 Or. 335, 513 P.2d 770, 773 (1973)(test for admissibility is whether the expert is of "appreciable help to the jury ... whether the subject is such that the expertise of the witness gives ... special insight superior to that of" the jury).

[¶ 65.] In the face of the county's argument its own practices were reasonable, the jury was not permitted to hear expert opinion on standard practices in other states with similar winter conditions. Industry standards and standards of care are common grist for expert testimony. *See In re Widdison,* 539 N.W.2d 671 (S.D.1995)(in professional licensing case, expert testimony used to establish an appropriate standard for conduct and whether the person seeking to retain license met or fell below standard); *Schrader v. Tjarks,* 522 N.W.2d 205 (S.D.1994)(expert testimony on nursing standard of care); *In re* Schramm, 414 N.W.2d 31 (S.D.1987)(expert required to establish standard of care for dentistry); *Magbuhat v. Kovarik,* 382 N.W.2d 43 (S.D.1986), *modified on other grounds,* 445 N.W.2d 315 (S.D.1989)(expert testimony on standard of care for professional appropriate unless the area is within the common knowledge and comprehension of laypersons); *Breivo v. City of Aberdeen,* 15 Wash.App. 520, 550 P.2d 1164 (1976)(expert testimony allowable to provide "technical factors" beyond general knowledge of jurors in highway safety case); *TCBY Systems, Inc. v.*

---

ter conditions. The ice patch here was caused by a shelter belt, intentionally planted, of course, but hardly an artificial entity in South Dakota's agrarian landscape, especially since the aftermath of the "dust bowl" years. Between 1935 and 1942 the United States Department of Agriculture planted 3,206 miles of shelter belts in central South Dakota alone, using 41,599,000 trees. Herbert S. Schell, *History of South Dakota,* 353 (3ed rev 1975). Obviously, we cannot now reexamine the holding in *Bland I,* but these points will perhaps bear further refinement and possible modification in future cases. On the other hand, the law seems clear that accidents

occurring in generally icy or snowy conditions on streets and highways will not ordinarily give rise to local government liability. *Cf. Homan v. Chicago & Northwestern Transp. Co.,* 314 N.W.2d 861, 862 (S.D.1982). *See, e.g.,* Lansing v. County of McLean, 69 Ill.2d 562, 14 Ill.Dec. 543, 372 N.E.2d 822 (1978)(posting warning signs everywhere of conditions resulting from general snow and ice impractical and expensive); Workman v. Sioux City, 218 Iowa 217, 253 N.W. 909 (1934)(to hold cities liable for ice and snow on roads, with its thawing and freezing, would establish a rule of liability forcing them into bankruptcy).

*RSP Co., Inc.,* 33 F.3d 925, 929 (8th Cir.1994)(expert testimony suitable to help jury understand reasonableness in franchise industry); *Quintel Corp. v. Citibank, N.A.,* 606 F.Supp. 898 (S.D.N.Y.1985)(expert testimony helpful to demonstrate real estate industry standards).

[¶ 66.] Evidentiary rulings will not be disturbed absent a clear showing of an abuse of discretion. *Zens,* 538 N.W.2d at 795; *State v. Hanson,* 456 N.W.2d 135, 138 (S.D.1990). To assess whether there was an abuse we might find it enlightening to examine what the trial court allowed the opponent to present. As part of its case, the county called the Director of Operations for the South Dakota Department of Transportation (DOT), who testified over plaintiffs' objection about written state and federal road maintenance standards for federally funded highways such as the road where this accident occurred. In explaining why it allowed this testimony for the county, and refused plaintiffs' industry standards testimony, the court remarked, "Well for your benefit, I want to say, my knowledge of what has happened is I don't think that I ruled that someone couldn't perhaps refer to what other people do or what state standards there were. I didn't intend to foreclose that, it's got to come in the right way."

[¶ 67.] Although the standards the DOT witness referred to were not specifically applicable to counties, he was nonetheless allowed to impart to the jury that no written federal or state guidelines "direct what the county should do to 'maintain the road in a manner satisfactory.'" The clear implication was that if no more precise standards controlled state roads, then certainly less-traveled county roads would have inferior maintenance standards. Contrast this with the prohibited opinion from plaintiffs' expert, proposed in one of plaintiffs' refused offers of proof:

> Our offer is that our expert, one of the foremost experts in the country on this subject of snow and ice control, would verify that the recognized standard of care in this industry would require this sanding to have been done at this icy hazard. I believe he testified that way [in the deposi-

tion]. But, that since it's an icy hazard, it's isolated and the road surface is different on both sides of it, and the hazard, which is part of what makes it a hazard, that he— that the generally accepted standard of care is for safety and that they have to take action, they cannot not [sic] stand there by and allow the hazard to knowingly be on the road. So, his opinion is very similar to law, in that he would explain that that is the practice which is followed in virtually every jurisdiction.

Neither side's expert was permitted to testify on industry standards, but it is not satisfactory to infer that because both experts were similarly restricted, the ruling was fair. Plaintiffs had the burden of proof and the county was still able put before the jury that no written guidelines governed snow and ice removal for this road.

[¶ 68.] Not allowing plaintiffs' expert to testify on maintenance routines for icy roads in other states was an abuse of discretion. Other courts have likewise found similar restrictions on expert opinion reversible error. *See, e.g., Ceravole v. Giglio,* 152 A.D.2d 648, 543 N.Y.S.2d 524, 526 (App.Div.1989)("preclusion and improper restriction" of expert testimony regarding accepted practice among municipalities on painting pavement markings on roadways warranted reversal); *Linkstrom v. Golden T. Farms,* 883 F.2d 269, 270–272 (3rd Cir.1989)(error to exclude testimony of farm safety expert regarding safety practices of a reasonable, prudent farmer). I also join Justice Sabers' writing on this issue.

[¶ 69.] For these reasons I would reverse.